STATE OF NORTH CAROLINA v. WILLIAM KENNETH HANDY

No. 315A91

(Filed 25 June 1992)

1. **Homicide § 493 (NCI4th) — murder — instructions — premeditation and deliberation — lack of provocation**

There was sufficient evidence in a first degree murder prosecution to instruct the jury that it could infer premeditation and deliberation from lack of provocation by the victim. The evidence of provocation by the victim was not uncontradicted and, notwithstanding the State's introduction of defendant's statements to the contrary, the jury could reasonably have concluded that the victim did nothing to provoke defendant and that defendant killed the victim with premeditation and deliberation while engaged in an armed robbery.

**Am Jur 2d, Homicide § 529.**

**Homicide: presumption of deliberation or premeditation from the circumstances attending the killing. 96 ALR2d 1435.**

**Homicide: presumption of deliberation of premeditation from the fact of killing. 86 ALR2d 656.**

2. **Homicide § 493 (NCI4th) — murder — instructions — premeditation and deliberation — provocation — manslaughter**

An instruction by a trial court in a murder prosecution on inferring premeditation and deliberation from a lack of provocation by the victim was not erroneous where it was clear that the trial court's instruction, read as a whole, correctly informed the jurors that the State had the burden of proving beyond a reasonable doubt the elements of premeditation and deliberation and that the jurors could consider the evidence of the facts and circumstances surrounding the killing, including any evidence suggesting an absence of provocation by the victim, in determining whether the killing was committed with premeditation and deliberation. The mere fact that the jury was instructed concerning voluntary manslaughter and legal provocation does not change the outcome.

**Am Jur 2d, Homicide §§ 290, 501, 529.**

**3. Homicide § 499 (NCI4th); Robbery § 4.3 (NCI3d) — felony murder — armed robbery — intent to take property after killing**

The trial court did not err in its instructions on armed robbery and felony murder where the court instructed the jury that the order of the killing and the taking of property is immaterial where there is a continuous transaction and that it is immaterial whether the intent to commit the theft was formed before or after the killing, provided that the theft and the killing are aspects of a single transaction. The trial court's instructions did not in any way prevent the jurors from considering any evidence to support defendant's theory that the murder and the taking were not part of a single, continuous transaction.

**Am Jur 2d, Homicide §§ 72-74, 498, 534.**

**What constitutes termination of felony for purpose of felony-murder rule. 58 ALR3d 851.**

**4. Jury § 6.3 (NCI3d) — jury selection — prohibited question — incorrect statement of law**

The trial court did not abuse its discretion in a prosecution for robbery and murder by sustaining the State's objection to a question from defense counsel to prospective jurors where the question was based upon an incorrect statement of the law and the court had not yet instructed the jury on the legal principles applicable to the case.

**Am Jur 2d, Homicide § 466.**

**5. Evidence and Witnesses § 338 (NCI4th) — murder — statements by defendant concerning homosexuals — admissible**

The trial court did not err in a prosecution for murder and armed robbery by admitting testimony to the effect that defendant had said on the evening of the killing that he had a "faggot" waiting on him and that defendant could probably get him to buy defendant some pot or cocaine. Defendant's attitude toward homosexuals was extremely relevant to the issues at defendant's trial because defense counsel suggested throughout the trial that a homosexual advance by the victim sent defendant into a rage resulting in the killing. The jury could have inferred from this testimony and other evidence that defendant knew that the victim was homosexual and nevertheless went to his hotel room for the purpose and with the

intent of robbing the victim. Evidence of other crimes, wrongs, or acts is inadmissible under N.C.G.S. § 8C-1, Rule 404(b) if its *sole* relevance is to show the defendant's character or his propensity to commit an offense with which he is charged.

**Am Jur 2d, Evidence §§ 245, 263, 270, 274.**

6. **Evidence and Witnesses § 90 (NCI4th) — murder — statements by defendant — desire to obtain drugs — probative value not outweighed by prejudice**

The trial court did not abuse its discretion in a murder and robbery prosecution by admitting testimony to the effect that defendant had said on the evening of the killing that he had a "faggot" waiting on him and that defendant could probably get him to buy defendant some pot or cocaine. The testimony was relevant and probative to defendant's state of mind, intent, and motive, and it could not be said that the admission of this evidence created a danger of unfair prejudice to defendant, especially in light of defendant's subsequent testimony that he was looking forward to the marijuana. N.C.G.S. § 8C-1, Rule 403.

**Am Jur 2d, Evidence §§ 245, 263, 270, 274.**

7. **Criminal Law § 1167 (NCI4th) — armed robbery — sentencing — aggravating factor — intoxication of victim**

The trial court did not err when sentencing defendant for armed robbery by finding in aggravation that the victim was physically infirm because he was intoxicated where there was ample evidence to support the trial judge's finding of infirmity as a result of intoxication and ample evidence from which the trial judge may have inferred that defendant either targeted the victim due to his state of intoxication or took advantage of the victim's drunken condition during the commission of the robbery and murder. N.C.G.S. § 15A-1340.4(a)(1)j.

**Am Jur 2d, Criminal Law § 598.**

8. **Criminal Law § 1239 (NCI4th) — robbery — sentencing — mitigating circumstance — provocation**

The trial court did not err when sentencing defendant for robbery by not finding the mitigating circumstance of strong provocation based on evidence that defendant killed the victim as a result of a homosexual advance. Although the State in-

troduced statements in which defendant asserted that he killed
the victim as a result of a homosexual advance and subsequent-
ly took the victim's property only to make it appear that
the victim was killed in a robbery, the mere fact that the
State introduced these statements does not mean that the
evidence was uncontradicted. By returning a verdict of first
degree murder with premeditation and deliberation rather than
a verdict of second degree murder or voluntary manslaughter,
the jury rejected defendant's claim of provocation. N.C.G.S.
§ 15A-1340.4(a)(2)i.

**Am Jur 2d, Criminal Law § 598.**

**Insulting words as provocation of homicide or as reducing
the degree thereof. 2 ALR3d 1292.**

APPEAL as of right pursuant to N.C.G.S. § 7A-27(a) from a
judgment imposing a sentence of life imprisonment entered by
*Strickland, J.*, at the 22 October 1990 Criminal Session of Superior
Court, ONSLOW County, upon a jury verdict finding defendant guilty
of first-degree murder. Defendant's motion to bypass the Court
of Appeals as to his conviction of robbery with a dangerous weapon
was allowed by this Court 20 November 1991. Heard in the Supreme
Court 13 May 1992.

*Lacy H. Thornburg, Attorney General, by G. Patrick Murphy,
Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by M. Gordon
Widenhouse, Jr., Assistant Appellate Defender, for defendant-
appellant.*

MEYER, Justice.

During the evening of 3 November 1986 or the early morning
of 4 November 1986, defendant stabbed Eugene Michael Morgan
sixteen times, killing him. Defendant was subsequently indicted
for murder and robbery with a dangerous weapon and was tried
capitally. The jury returned verdicts finding defendant guilty of
robbery with a dangerous weapon and first-degree murder on the
theories of premeditation and deliberation and felony murder. Follow-
ing a sentencing proceeding conducted pursuant to N.C.G.S.
§ 15A-2000, the jury recommended a sentence of life imprisonment
after determining that the two aggravating circumstances found

were not sufficiently substantial to call for the imposition of the death penalty when considered with the one mitigating circumstance found. The trial court, following the recommendation of the jury, sentenced defendant to life imprisonment for the murder of Morgan and imposed a consecutive sentence of forty years' imprisonment for the robbery with a dangerous weapon conviction.

On appeal, defendant brings forward numerous assignments of error. After a thorough review of the transcript of the proceedings, record on appeal, briefs, and oral arguments, we conclude that defendant received a fair trial, free of prejudicial error. We therefore affirm defendant's convictions and the sentences imposed thereon.

The evidence presented at defendant's trial tended to show that Eugene Michael Morgan was killed by defendant during the execution of a robbery planned by defendant and Michael Felty, defendant's friend. Defendant was nineteen years old at the time and had been discharged from the Marine Corps two or three months earlier. Since the time of his discharge, defendant had been working at various jobs but was nonetheless low on cash. He lived with several friends after he was discharged, and on 3 November 1986, defendant moved in with Felty at Felty's mother's home.

During the afternoon of 3 November, defendant and Felty went to a nearby store and purchased a fifteen-pack of beer. Later, they walked to a car wash and spoke with the owner about employment. After leaving the car wash, the two went to Gary's Lounge, a nearby bar. On their way to the bar, defendant and Felty met Loretta Malone and Wendy Davis. The four began talking, and the two women invited defendant and Felty to a party at their house. Defendant and Felty explained that they were on their way to Gary's Lounge but might go to the party later. Before going to Gary's Lounge, defendant and Felty had consumed two beers each. At the bar, defendant drank two more beers while playing pool.

About an hour later, defendant and Felty went to the party at the home of Malone and Davis, where they finished drinking the fifteen-pack they had purchased earlier. At the party, defendant met several people, including the victim, Eugene Michael Morgan. Defendant and Morgan talked, and at some point in the evening, Morgan told defendant that he had some money and asked defend-

STATE v. HANDY

[331 N.C. 515 (1992)]

ant if he would like to go to Harvey's Lounge at the Holiday Inn for a drink. Defendant and Morgan left the party but returned shortly thereafter. One witness who was at the party testified that defendant appeared angry when he and Morgan returned and that defendant later "seemed upset" when Morgan hugged one of the men at the party. Later in the evening, defendant pulled a knife on Felty, pressing it to his groin area. According to Malone, defendant pulled the knife on Felty after Felty made some comment to defendant. Malone testified that defendant became upset, shoved Felty against the wall, pressed the knife against Felty, and said, "This is what I do to faggots that mess with me."

Morgan was intoxicated when he left the party driving his moped. Davis had offered to let Morgan stay and sleep on the couch, but Morgan declined the offer, stating that he was going to stay at the Holiday Inn because he had been drinking too much to drive home. Defendant and Felty left the party approximately fifteen to twenty minutes after Morgan. Malone testified that she was talking to defendant and Felty at the time and that defendant acted as though "[h]e was in a hurry to leave."

The next morning, 4 November, Morgan was found dead, on a bed in Room 220 of the Holiday Inn. He was lying on his back at the foot of the bed, with his feet on the floor and his pants unbuttoned, unzipped, and partially pulled down. His face was turned toward the door, and blood was running from his mouth. On the other bed was a wallet, identification papers, and some nails. A vest identified as belonging to Morgan was found on the floor. The pockets of the vest had been turned inside out.

An autopsy of Morgan's body revealed sixteen stab wounds: three to the chest and three to the abdomen, as well as multiple wounds to the neck, the area below the collarbone, the inner portion of the left arm, and the scrotum. The pathologist who performed the autopsy opined that Morgan died as a result of massive hemorrhage caused by the wounds to the chest and abdomen. From a blood-alcohol test, the pathologist also determined that Morgan was "acutely intoxicated" at the time of his death, with a blood-alcohol level of .22.

On 4 November, defendant was questioned by officers investigating Morgan's death. Defendant told the officers that he struck Morgan with his fist after Morgan made homosexual advances toward him. According to defendant, Morgan fell back-

ward and defendant stabbed him, first in the genital area, then "everywhere." Defendant stated that he "filtered" through Morgan's wallet and took Morgan's keys to make it look like a robbery.

After his arrest, defendant made a written statement describing the details of the previous night's events. Defendant explained that he had met Morgan at a party and that he and Morgan left the party to go to Harvey's Lounge at the Holiday Inn but returned to the party because Morgan stated that he needed to change clothes and defendant "didn't want to go through the hassle" of waiting for Morgan as he changed clothes. Defendant stated that he and Morgan returned to the party and that he drank for some period of time afterward. Defendant continued:

> We left and we walked up the street, Mike Felty and I. We saw Morgan putting his bike, his moped up, and he was drunk and we saw him leave his helmet outside so [Felty] ran up and grabbed [Morgan's] helmet and we could [not] find [Morgan] so [Felty] took it up to the office and turned it in . . . .

> So we started to walk home and we, [Felty] and I, saw [Morgan] and told him where his helmet was and [Morgan] said don't worry about it. [Morgan] then asked both of us if we wanted to come up. We, [Felty] and I, did and we went up to the second floor. Then went into this room and sat down with the T.V. set on. . . .

> I sat down on the bed, and [Morgan] asked me something about gay people. I said I don't know 'cause I'm not gay and don't know anybody that was. We started cracking a few jokes, [Felty], Morgan and I, and [Morgan] reached over and shook my hand and wouldn't let go of it for about 15 seconds or more telling me that he liked me and said that I was an all right dude. . . .

>      . . . .

>      . . . I said cool, and pulled my hand away. I was ready to go and I had to use the head. I came out of the bathroom and [Morgan] wanted to use it. On the way into the doorway he grabbed my right . . . buttock . . . . I got really pissed. I mean I was mad and just turned around and said you f----- a--hole. [Morgan] looked at me and I pushed him up against the side of the bathroom door and he back [sic] away from me and I started calling him all sorts of names. I wasn't yelling

STATE v. HANDY

[331 N.C. 515 (1992)]

but I went off and [Felty] pushed him and I just couldn't control myself.

I hit him with my left hand and I pulled my knife out and stabbed him. I think the first time was in the [scrotum] and then he fell down on the bed and I started stabbing him.

Mike Felty ran out of the door and left. He said, man, I'm getting out of here. He split. I then still couldn't stop. I was more pissed off now that he was dead. I kicked and beat him, stabbed him, and wiped off my knife on the bed.

I tried to make it look like it was a robbery. I took [Morgan's] billfold out and grabbed the $12 he had in it, and took his keys which were either on the nightstand or on the floor. . . .

I left the room after I kicked him a few more times.

Defendant further stated that he and Felty went to the Thunderbird Lounge and drank a couple of beers after leaving the Holiday Inn.

After defendant made this handwritten statement, the investigating officers asked defendant specific questions concerning the events of the previous night. When one of the officers stated that she did not believe defendant's story, defendant admitted that he had gone to Morgan's room to rob Morgan, that he and Felty "had planned doing the robbery when they were walking up the steps [to Morgan's room], and that [Felty] had stabbed [Morgan] one time and that [Felty] had wiped the knife off twice."

Throughout the trial, defense counsel proceeded on the theory that, at most, defendant was guilty of second-degree murder. Defendant admitted killing Morgan but maintained that he did not act with premeditation or deliberation, that he was drunk and went "berserk" when Morgan made a homosexual advance toward him. Defendant further maintained that he could not be found guilty under the felony murder rule because the killing and the taking of Morgan's property were not part of a single transaction, that defendant and Felty took Morgan's belongings only to make it appear as though Morgan was killed during a robbery.

At trial, defendant denied telling the investigating officers that he and Felty planned to rob Morgan or that Felty stabbed Morgan. For the most part, defendant's trial testimony was virtually identical to the written statement defendant had given to the investigating officers. Defendant testified that he and Felty were

leaving the Holiday Inn when Morgan came out of a stairway area and invited the two to his hotel room for what defendant understood to be a drink. Defendant stated that he, Felty, and Morgan went to Morgan's room, where they sat and joked, and that defendant went "berserk" and started stabbing Morgan when Morgan grabbed defendant's buttock. Contrary to his prior statements to the police, however, defendant testified that Felty did not leave after the stabbing began but remained in the hotel room throughout the entire incident.

Defendant also produced evidence tending to establish that defendant's violent reaction to Morgan's advance resulted from a prior sexual assault experienced by defendant. Defendant testified that he was seven years old when an adult male picked him up at the park, told defendant that he would take defendant home, but drove defendant to a remote area where the man sodomized defendant. Defendant admitted that prior to killing Morgan he had told only his half brother about the sexual assault, that he did not tell the investigating officers that he had been sexually assaulted as a child, and that he had not explained to the investigating officers that a prior sexual assault caused him to react violently toward Morgan. To corroborate defendant's testimony of the prior alleged sexual assault, defendant's half brother testified that defendant had told him of the alleged sexual assault approximately ten years after the incident. In addition, Dr. Stack, a clinical psychologist, and Dr. Colligan, a pyschiatrist, both testified that they believed that defendant had been sexually assaulted as a child and that the reason for defendant's violent attack upon Morgan was, in part, due to the prior sexual assault of defendant.

I.

[1] Defendant first contends that the trial court erred by instructing the jury, over defendant's objection, that it could infer premeditation and deliberation from, among other things, "lack of provocation by the victim." Defendant argues that this instruction was erroneous because (1) the instruction was not supported by the evidence, which tended to show that defendant killed the victim after the victim made homosexual advances toward defendant; (2) the instruction impermissibly shifted the burden of proof to defendant, requiring him to come forward with evidence of provocation to rebut an inference of premeditation and deliberation; (3) the instruction may have resulted in juror confusion in that the instruction "did

not adequately distinguish between 'legal provocation' (the kind sufficient to reduce murder to manslaughter by negating malice) and 'ordinary provocation' (the kind sufficient to reduce first-degree murder to second-degree murder by negating premeditation and deliberation)"; and (4) the instruction amounted to an impermissible expression of judicial opinion that the State had proven a lack of provocation.

In *State v. Faison*, 330 N.C. 347, 411 S.E.2d 143 (1991), we addressed similar contentions, concluding that the defendant in that case had failed to show plain error resulting from the trial court's instructions. In *Faison*, the evidence showed that the defendant went to the victim's home, killed the victim, and stole some of the victim's belongings. The defendant in that case claimed that he did not act with premeditation and deliberation but killed the victim after a homosexual assault upon him by the victim. As in this case, the defendant contended that the trial court erred in instructing the jury that it could infer premeditation and deliberation from lack of provocation by the victim. Because the defendant had not objected to the trial court's instructions at trial, we reviewed the defendant's assignment of error only for plain error. Despite abundant evidence of provocation by the victim, we concluded that the defendant had failed to show plain error, stating that "[t]he State's evidence, as presented at trial, could reasonably lead jurors to conclude that defendant killed [the victim] with premeditation and deliberation while committing an armed robbery." *Id.* at 362-63, 411 S.E.2d at 152.

As in *Faison*, the evidence of provocation on the part of the victim in this case was not uncontradicted. Much evidence was presented, by both the State and defendant, suggesting that defendant killed Morgan as a result of rage brought about by a sexual advance made by Morgan toward defendant. However, the State also introduced into evidence an alleged statement by defendant admitting that he and Felty went to Morgan's room for the purpose of robbing Morgan. This alleged statement made no mention of any homosexual advance by Morgan. Testimony was also presented establishing that defendant had only three to four dollars and needed money to rent an apartment, that defendant knew Morgan had money and was intoxicated, and that defendant "was in a hurry to leave" the party once Morgan had left. Notwithstanding the State's introduction of defendant's statements to the contrary, the jury could reasonably have concluded that Morgan did nothing

to provoke defendant and that defendant killed Morgan with premeditation and deliberation while engaged in an armed robbery. *See State v. Wooten*, 295 N.C. 378, 387-88, 245 S.E.2d 699, 705 (1978) (State not bound by exculpatory portions of confession introduced by it when other evidence sheds different light on circumstances surrounding offense); *State v. Hankerson*, 288 N.C. 632, 637-38, 220 S.E.2d 575, 580-81 (1975), *rev'd on other grounds*, 432 U.S. 233, 53 L. Ed. 2d 306 (1977) (same). Therefore, we reject defendant's argument that there was no evidence to support the instruction that premeditation and deliberation on the part of defendant could be inferred from "lack of provocation by the victim."

[2] Having concluded that there was sufficient evidence to support an instruction that the jury could infer premeditation and deliberation from lack of provocation by the victim, we now consider whether the instruction, as given by the trial court, was erroneous. Defendant concedes that the instruction, standing alone, may not have been error. However, defendant maintains that this instruction, coupled with the trial court's subsequent charge on voluntary manslaughter and the definition of "legal" or "adequate" provocation, which is sufficient to reduce murder to manslaughter, may have misled the jurors to believe that a killing committed without "legal" or "adequate" provocation constitutes first-degree murder committed with premeditation and deliberation. We disagree.

In this case, the trial court properly instructed the jury that the State had the burden of proving beyond a reasonable doubt each and every element of the crime of first-degree murder, including the elements of premeditation and deliberation. At no point during its charge to the jury did the trial court instruct the jury that premeditation and deliberation should be *presumed*. Nor did the trial judge express any opinion as to whether the State had proven a lack of provocation by the victim. *See State v. Fowler*, 285 N.C. 90, 96, 203 S.E.2d 803, 807 (1974) (statement that jury may consider "evidence of the absence of provocation" "in determining whether there was . . . premeditation and deliberation" does not amount to judicial "expression of an opinion that there was no evidence of provocation"), *death sentence vacated*, 428 U.S. 904, 49 L. Ed. 2d 1212 (1976). Rather, the trial court instructed:

> Neither premeditation nor deliberation is usually susceptible of direct proof. They may be proved by proof of circumstances from which they *may be inferred*, such as, lack

STATE v. HANDY

[331 N.C. 515 (1992)]

of provocation by the victim; conduct of the defendant before, during, and after the killing; use of grossly excessive force; infliction of lethal wounds after the victim is felled; brutal or vicious circumstances of the killing; manner in which or means by which the killing was done.

(Emphasis added.) It is clear that the trial court's instructions, when read as a whole, correctly informed the jurors, first, that the State had the burden of proving beyond a reasonable doubt the elements of premeditation and deliberation and, second, that the jurors could consider the evidence of the facts and circumstances surrounding the killing, including any evidence suggesting an absence of provocation by the victim, in determining whether the killing was committed with premeditation and deliberation. *Cf. State v. Forrest*, 321 N.C. 186, 362 S.E.2d 252 (1987) (holding that trial court did not err in instructing jury that it could infer malice from use of deadly weapon).

The mere fact that the jury was instructed concerning voluntary manslaughter and "legal" provocation does not change the outcome of this case.[1] With regard to first-degree murder, the jury was repeatedly instructed that it could find defendant guilty only if the State had proven beyond a reasonable doubt that defendant acted with premeditation and deliberation in the killing. In accord with the North Carolina Pattern Jury Instructions and extensive North Carolina case law, the trial court defined premeditation as an "intent to kill the victim [formed] over some period of time, however short, before" the killing. *See* N.C.P.I.—Crim.

---

1. The trial court's instructions on voluntary manslaughter and "legal" provocation were as follows:

Voluntary manslaughter is the unlawful killing of a human being without malice and without premeditation and without deliberation.

A killing is not committed with malice if the defendant acts in the heat of passion upon adequate provocation.

The heat of passion does not mean mere anger. It means that the defendant's state of mind was at the time so violent as to overcome reason so much so that he could not think to the extent necessary to form a deliberate purpose and control his actions.

Adequate provocation may consist of anything which has a natural tendency to produce such passion in a person of average mind and disposition, and the defendant's act took place so soon after the provocation that the passion of a person of average mind and disposition would not have cooled.

206.10 (1989). The trial court further instructed that "deliberation . . . means that [defendant] acted while he was in a cool state of mind" and that the "intent to kill was formed for a fixed purpose, *not under the influence of some suddenly aroused violent passion.*" (Emphasis added.) *Accord* N.C.P.I.—Crim. 206.10. Significantly, the jury was correctly charged that defendant would not be guilty of first-degree murder if he formed the intent to kill Morgan under the influence of some suddenly aroused violent passion, such as was alleged to have arisen from Morgan's homosexual advance toward defendant. The instructions given by the trial court may not have been a model of clarity insofar as they did not define for the jury what type of provocation the proof of which will prevent the jury from inferring premeditation and deliberation. However, we do not agree with defendant that these instructions may have caused the jurors to conclude that defendant acted with premeditation or deliberation merely because the evidence showed that defendant did not act in a heat of passion following adequate provocation the proof of which reduces the degree of homicide to voluntary manslaughter. We therefore overrule this assignment of error.

II.

[3] In his next assignment of error, defendant contends that the trial court erred in instructing the jury on the charges of felony murder and robbery with a dangerous weapon ("armed robbery"). Specifically, defendant assigns as error the underscored portions of the following instruction given by the trial court:

I further charge that for you to find the defendant guilty of first degree murder under the first degree felony-murder rule, the State must prove three things beyond a reasonable doubt:

First, that the defendant committed robbery. That is, that the defend[a]nt ant [sic] took property from the person of another or in his presence.

In this regard, all that is required is that the elements of robbery with a dangerous [sic] occur under circumstances and in a time frame that can be perceived as a single transaction. Where the death and the taking are so connected as to form a continuous chain of events, a taking from the body of the dead victim is a taking from the person.

Next, that the defendant carried away the property. That the person did not voluntarily consent to the taking and carrying away of the property. That the defendant knew he was not entitled to take the property. That at the time of the taking the defendant intended to deprive the owner of its use permanently. That the defendant had a dangerous weapon in his possession at the time he obtained the property. A dangerous weapon is a weapon which is likely to cause death or serious bodily injury. And that the defendant obtained the property by endangering or threatening the life of that person with a dangerous weapon.

In this regard, the commission of robbery with a dangerous weapon does not depend upon whether the threat or use of violence precedes or follows the taking of the victim's property.

Where there is a continuous transaction, the temporal order of the threat or use of a dangerous weapon and the taking is immaterial. Provided that the theft and the force are aspects of a single transaction, it is immaterial whether the intention to commit the theft was formed before or after forced [sic] was used upon the victim.

Second, that while committing robbery with a dangerous weapon the defendant killed the victim with a deadly weapon.

In this regard, the commission of first degree murder under the felony-murder rule does not depend upon whether the killing precedes or follows the taking of the victim's property. . . .

Where there is a continuous transaction, the temporal order of the killing and the taking is immaterial. Provided that the theft and the killing are aspects of a single transaction, it is immaterial whether the intent to commit the theft was formed before or after the killing.

And third, that the defendant's act was a proximate cause of the victim's death.

(Emphasis added.) Conceding that the evidence was sufficient to support the jury's verdicts finding defendant guilty of armed robbery and felony murder based on the underlying offense of armed

STATE v. HANDY

[331 N.C. 515 (1992)]

robbery, defendant nevertheless argues that the trial judge erred in instructing the jury that "it is immaterial whether the intent to commit the theft was formed before or after the killing." The State argues that this instruction is a correct statement of the law of our state. We agree and therefore overrule this assignment of error.

"A murder . . . committed in the perpetration or attempted perpetration of any . . . robbery . . . shall be deemed to be murder in the first degree . . . ." N.C.G.S. § 14-17 (Supp. 1991). The evidence is sufficient to support a charge of felony murder based on the underlying offense of armed robbery where the jury may reasonably infer that the killing and the taking of the victim's property were part of one continuous chain of events. *Faison*, 330 N.C. 347, 411 S.E.2d 143; *State v. Green*, 321 N.C. 594, 365 S.E.2d 587, *cert. denied*, 488 U.S. 900, 102 L. Ed. 2d 235 (1988); *State v. Pakulski*, 319 N.C. 562, 356 S.E.2d 319 (1987). Neither the commission of armed robbery, as defined by N.C.G.S. § 14-87(a), nor the commission of felony murder based on armed robbery depends upon whether the intention to commit the taking of the victim's property was formed before or after the killing. *Faison*, 330 N.C. at 359, 411 S.E.2d at 150. Under N.C.G.S. § 14-17, a killing is committed in the perpetration of armed robbery when there is no break in the chain of events between the taking of the victim's property and the force causing the victim's death, so that the taking and the homicide are part of the same series of events, forming one continuous transaction. *Wooten*, 295 N.C. at 385-86, 245 S.E.2d at 704; *cf. State v. Thomas*, 329 N.C. 423, 434, 407 S.E.2d 141, 149 (1991) (felony murder charge supported by evidence that sexual act forming the basis for felony murder "was committed during a continuous transaction that began when the victim was alive").

We conclude that the trial court did not err in its instructions on armed robbery and felony murder. The trial judge did not, as defendant contends, peremptorily instruct the jurors that defendant was guilty of armed robbery or felony murder. In accord with our prior cases, the trial court merely instructed that "the temporal order of the killing and the taking [of the victim's property] is immaterial" *"[w]here there is a continuous transaction"* and that "it is immaterial whether the intent to commit the theft was formed before or after the killing" *"[p]rovided that the theft and the killing are aspects of a single transaction."* (Emphasis added.) The trial court's instructions did not in any way prevent the jurors

from considering any evidence to support defendant's theory, strenuously argued by defense counsel, that the murder and taking were not part of a single, continuous transaction.

Having reviewed the evidence presented in this case, we further conclude that there was sufficient evidence to submit to the jury the charge of felony murder based on armed robbery. Defendant himself testified at trial that he removed twelve dollars from Morgan's wallet immediately after killing Morgan. In addition, the State presented evidence tending to establish that defendant was low on cash and could not afford to rent an apartment and that defendant and Felty discussed robbing Morgan before going to Morgan's hotel room. Based on this evidence, the jury may reasonably have inferred that the killing and the taking were part of a continuous chain of events and that defendant therefore killed Morgan in the perpetration of an armed robbery. Therefore, we conclude that the trial court did not err in its instructions on robbery with a dangerous weapon and on felony murder.

III.

[4] Defendant further contends that the trial court abused its discretion in restricting defendant's voir dire examination of prospective jurors. Specifically, defendant argues that the trial court erred in sustaining the State's objection to the following question propounded by defense counsel:

Q. Now the district attorney has asked you some questions about two types of first degree murder. That is, the premeditation and deliberation, and the felony-murder rule, and the robbery-murder rule.

And he has basically explained to you that if a person's death is caused during the perpetration of a robbery that that would be the basis for a conviction of first degree murder.

*I would ask you again that if you would understand that if the robbery were to have occurred after the death, that could not be a felony-murder.*

(Emphasis added.)

We find no merit in this assignment of error. The question propounded by defense counsel is based upon an incorrect statement of the law of our state. As discussed earlier, a person may be convicted of felony murder based upon armed robbery despite the fact that the taking of the victim's property occurred after

the killing. *Faison*, 330 N.C. at 359, 411 S.E.2d at 150. Moreover, the trial court had not yet instructed the jury on the legal principles applicable to the case. Thus, we conclude that the trial court did not abuse its discretion in sustaining the State's objection. *See State v. Allen*, 322 N.C. 176, 367 S.E.2d 626 (1988); *State v. Phillips*, 300 N.C. 678, 268 S.E.2d 452 (1980).

IV.

[5]   Next, defendant argues that the trial court erred by allowing the State to introduce, over defendant's objection, testimony to the effect that on the evening of the killing defendant stated that he had "a faggot waiting on him at Gary's Lounge and that he needed to go up there because he could probably get him to buy [defendant] some pot or cocaine." Defendant maintains that this testimony "tended mainly to suggest defendant's propensity or predisposition to commit" the crimes charged and was thus inadmissible under Rules 404 and 403 of the North Carolina Rules of Evidence.

The State argues, and we agree, that the admission of this testimony was not error. "Under Rule 404(b), evidence of other crimes, wrongs, or acts is inadmissible if its *sole* relevancy is to show the defendant's character or his propensity to commit an offense with which he is charged." *State v. White*, 331 N.C. 604, 611, --- S.E.2d ---, --- (1992).

> Recent cases decided by this Court under Rule 404(b) state a clear general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.

*State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990). In *State v. Agee*, 326 N.C. 542, 391 S.E.2d 171 (1990), we stated:

> "Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or [if it] forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury."

*Id.* at 548, 391 S.E.2d at 174 (quoting *United States v. Williford,* 764 F.2d 1493, 1499 (11th Cir. 1985)).

The testimony at issue here tended to support the State's explanation of the circumstances surrounding Morgan's death. Throughout the trial, defense counsel suggested that a homosexual advance by Morgan sent defendant into a rage resulting in the killing of Morgan. Defendant's attitude toward homosexuals was extremely relevant to the issues at defendant's trial. Evidence, including testimony establishing that defendant had threatened Felty with a knife, stating "I'll cut you up. . . . This is what I do to faggots that mess with me," tended to show that defendant had an extreme dislike for homosexual men. Other evidence was presented from which the jury could have concluded that defendant was at the party when he discovered that Morgan was homosexual but nevertheless left the party with Morgan at one point in the evening and later went to Morgan's hotel room. Defendant's alleged statement that he had a "faggot waiting on him . . . and . . . he could probably get him to buy [defendant] some pot or cocaine" tends to buttress the State's theory that despite his dislike for homosexuals, defendant sought to take advantage of homosexuals. From this testimony and the other evidence presented at defendant's trial, the jury could reasonably have inferred that defendant, knowing that Morgan was homosexual, nevertheless went to Morgan's hotel room for the purpose and with the intention of robbing Morgan. Thus, we conclude that Rule 404 did not require that this testimony be excluded.

**[6]** We further reject defendant's argument that this testimony should have been excluded under Rule 403 because its probative value was substantially outweighed by the danger of unfair prejudice. Whether to exclude relevant but prejudicial evidence under Rule 403 is a matter left to the sound discretion of the trial court. *State v. Baldwin,* 330 N.C. 446, 456, 412 S.E.2d 31, 37 (1992). Such a decision " 'may be reversed for abuse of discretion only upon a showing that [the trial court's] ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision.' " *State v. Penley,* 318 N.C. 30, 41, 347 S.E.2d 783, 789 (1986) (quoting *State v. Riddick,* 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986)), *quoted in Baldwin,* 330 N.C. at 456, 412 S.E.2d at 37. For the reasons discussed hereinabove, we believe that the testimony at issue here was relevant and probative with respect to defendant's state of mind, intent, and motive. We have no doubt that

this testimony was prejudicial to defendant. *See Coffey*, 326 N.C. at 281, 389 S.E.2d at 56 ("Evidence which is probative of the State's case necessarily will have a prejudicial effect upon the defendant . . . ."). However, we are unable to say that the admission of this evidence with its reference to defendant's desire to obtain "some pot or cocaine" created a danger of *unfair* prejudice to defendant, especially in light of the fact that defendant himself subsequently testified on direct examination that he "was actually kind of looking forward to the marijuana" that his friends were supposed to be bringing to the party that evening. *See State v. Adams*, 331 N.C. 317, 328, 416 S.E.2d 380, 386 (1992) (evidence not considered prejudicial to defendant where defense counsel presents evidence of like import for purposes other than discrediting previously admitted evidence). We conclude that defendant has failed to show that the trial court abused its discretion in admitting this testimony.

## V.

[7] With regard to the sentence imposed for his conviction of armed robbery, defendant contends that the trial court erred in finding as an aggravating factor that "[t]he victim was physically infirm[ ] in that he was acutely intoxicated." *See* N.C.G.S. § 15A-1340.4(a)(1)(j) (Supp. 1991). According to defendant, the only evidence to support the finding of this aggravating factor was the pathologist's testimony that Morgan had a blood-alcohol level of .22 at the time of his death. Defendant argues that the trial court's finding was in error because the State failed to present any evidence "showing [that] Morgan suffered from any physical infirmity" as a result of intoxication or that Morgan's blood-alcohol level "was in any way transactionally related to the robbery." We find no merit in this argument.

Pursuant to the Fair Sentencing Act, "the trial judge is to consider certain statutory aggravating and mitigating factors in determining whether to sentence the defendant for a prison term in excess of the presumptive term." *State v. Vaught*, 318 N.C. 480, 482, 349 S.E.2d 583, 584 (1986). It is well established that the State bears the burden of proving the existence of an aggravating factor. *State v. Thompson*, 318 N.C. 395, 397, 348 S.E.2d 798, 800 (1986). However, the existence of such factors need not be proved beyond a reasonable doubt but by a preponderance of the evidence. *Id.*

With regard to the physical infirmity aggravating factor, N.C.G.S. § 15A-1340.4(a)(1)(j), we have stated on numerous occasions that "the victim's 'vulnerability is clearly the concern addressed by this factor.'" *Vaught*, 318 N.C. at 485, 349 S.E.2d at 586 (quoting *State v. Ahearn*, 307 N.C. 584, 603, 300 S.E.2d 689, 701 (1983)); *State v. Drayton*, 321 N.C. 512, 514, 364 S.E.2d 121, 122 (1988). To meet its burden of proving the existence of this aggravating factor, the State must ordinarily prove by a preponderance of the evidence (1) that at the time of the offense, the victim was suffering from a physical infirmity that impeded the victim's ability to flee, fend off the attack, recover from the effects of the attack, or otherwise avoid being victimized; and (2) that the defendant either targeted the victim because of the victim's infirmity or took advantage of the victim's infirmity during the actual commission of a crime, knowing that the victim, by reason of his infirmity, would be unlikely to intervene or defend himself effectively. *Drayton*, 321 N.C. at 514, 364 S.E.2d at 122; *Thompson*, 318 N.C. at 398, 348 S.E.2d at 800.

In this case, the record contains ample evidence to support the trial judge's finding that Morgan was physically infirm as a result of intoxication. The pathologist who conducted the autopsy of Morgan's body testified that Morgan was "acutely intoxicated" at the time of his death, with a blood-alcohol level of .22. Witnesses who had seen Morgan at the party earlier that evening also testified that Morgan was "pretty well high," "about drunk," and "intoxicated." Defendant himself testified that Morgan was so intoxicated that Morgan fell off his moped while driving a short distance across the street, then proceeded on his way, leaving his helmet lying on the ground. This evidence alone suggests that Morgan's ability to perform normal functions was impaired as a result of intoxication. In addition, the evidence presented at defendant's trial suggested that Morgan, who was virtually the same size as defendant, made no effort to defend himself against defendant's deadly assault. Both at trial and in his prior statements to the police, defendant stated that he "grabbed" Morgan, "pushed him . . . against the door," and "hit him." According to defendant, Morgan made no attempt to flee or to defend himself against this assault but "stumbled" backwards to the bed, where he fell. Despite the fact that defendant thereafter stabbed Morgan sixteen times, an autopsy revealed no defensive wounds to Morgan's hands or outer arms. Moreover, officers who investigated the crime scene testified that

there was no evidence of a struggle in the room and that the bed on which Morgan was found dead was virtually undisturbed. We believe that this evidence is sufficient to support the trial court's finding that Morgan's state of intoxication impeded his ability to flee from, fend off, or otherwise avoid defendant's attack upon him.

We further conclude that there was ample evidence from which the trial judge may have inferred that defendant either targeted Morgan due to his state of intoxication or took advantage of Morgan's drunken state during the commission of the robbery and murder. Clearly, this is not a case where the defendant was unaware of the victim's physical infirmity. Throughout the evening, defendant had been at a party with Morgan. Defendant had seen and spoken with Morgan, and at one point during the evening, defendant had left the party with Morgan. According to defendant's own testimony, defendant knew that Morgan was drunk, if not beforehand, at the time Morgan left the party. In addition, the State presented evidence of an oral statement wherein defendant admitted to police officers that he and Felty went to Morgan's hotel room to rob Morgan. This evidence, coupled with the testimony establishing that Morgan had "flashed" some money at the party and that defendant "was in a hurry to leave" after Morgan left the party, was sufficient to support a reasonable inference that defendant went to Morgan's hotel room for the purpose of robbing Morgan, knowing that defendant's chances of success were greater because Morgan was intoxicated. Moreover, we conclude that the evidence establishing Morgan's apparent inability to flee, fend off, or otherwise avoid defendant's attack, heretofore discussed, sufficiently supports a finding that defendant took advantage of Morgan's physical infirmity during the course of the robbery and murder. Thus, the trial court did not err in finding as an aggravating factor that the victim was physically infirm as a result of intoxication.

VI.

[8] Finally, defendant contends that he is entitled to a new sentencing hearing on his armed robbery conviction because the trial court failed to find the existence of the statutory mitigating factor that "defendant acted under strong provocation, or the relationship between the defendant and the victim was otherwise extenuating," N.C.G.S. § 15A-1340.4(a)(2)(i) (Supp. 1991). Defendant argues that it was error for the trial court not to find the existence of this

STATE v. HANDY

[331 N.C. 515 (1992)]

mitigating factor because strong provocation and an extenuating relationship were both proved by uncontradicted evidence establishing that defendant had killed Morgan as a result of a homosexual advance. We disagree.

As discussed previously herein, the evidence of provocation on the part of the victim was not uncontradicted. As we stated in *Faison*, "[t]his case, in essence, boiled down to whether [the] jurors believed defendant's version of what happened . . . or whether they believed the State's version of [the] events." *Faison*, 330 N.C. at 362, 411 S.E.2d at 152. The State presented ample evidence from which it could reasonably be inferred that defendant went to Morgan's hotel room for the purpose of robbing Morgan. The State did introduce into evidence statements wherein defendant asserted that he killed Morgan as a result of a homosexual advance and subsequently took Morgan's property only to make it appear as though Morgan was killed during the course of a robbery. However, the mere fact that the State introduced these statements into evidence does not mean that the evidence of provocation was uncontradicted. *See Wooten*, 295 N.C. at 387-88, 245 S.E.2d at 705. By returning a verdict finding defendant guilty of first-degree murder with premeditation and deliberation rather than a verdict of second-degree murder or voluntary manslaughter, the jury rejected defendant's claim of provocation. Thus, the trial court did not err in failing to find in mitigation of the robbery that defendant acted under strong provocation or that the relationship between defendant and Morgan was otherwise extenuating.

We conclude that defendant received a fair trial, free of prejudicial error.

No error.