STATE OF NORTH CAROLINA v. CLETIS EUGENE ROSEBOROUGH

No. 13A95

(Filed 31 July 1996)

**1. Homicide § 44 (NCI4th)— murder in perpetration of kidnapping—continuous chain of events**

A killing is committed in the perpetration of a kidnapping when there is no break in the chain of events so that the kidnapping and the homicide are part of the same series of events, forming one continuous transaction. The temporal order of the killing and the felony is immaterial where there is a continuous transaction, and it is immaterial whether the intent to commit the felony was formed before or after the killing provided the felony and the killing are aspects of a single transaction.

**Am Jur 2d, Homicide §§ 46, 72, 166, 220.**

STATE v. ROSEBOROUGH

[344 N.C. 121 (1996)]

**What constitutes termination of felony for purpose of felony-murder rule. 58 ALR3d 851.**

**2. Homicide § 283 (NCI4th)— killing victim and kidnapping another—continuous chain of events—felony murder**

The State's evidence was sufficient for the jury reasonably to infer that the killing of Rodriguez and the kidnapping of Celiz were part of one continuous chain of events so that the Celiz kidnapping was an appropriate predicate felony to support defendant's conviction of felony murder for the killing of Rodriguez where the evidence tended to show that defendant, Hunter, Peterson, and Noble sought out some Hispanics under a bridge and fired several warning shots; defendant and Hunter stopped two of the Hispanics who tried to come out from under the bridge; while defendant and Hunter were talking to these two Hispanics, Peterson fired the shots under the bridge which killed Rodriguez; Celiz came up out of the bushes and defendant asked him where he was going and whether he was trying to run away; defendant then asked Peterson for the gun and said he hadn't pistol whipped anybody in a long time; defendant then hit Celiz with the gun; defendant, Hunter, and Peterson continued the beating of Celiz, during which the first-degree kidnapping was committed; and when they heard sirens, defendant, Hunter, and Peterson ran away.

**Am Jur 2d, Homicide §§ 46, 72, 166.**

**What constitutes termination of felony for purpose of felony-murder rule. 58 ALR3d 851.**

**3. Homicide § 374 (NCI4th)— kidnapping—acting in concert—killing by accomplice—felony murder**

The evidence was sufficient to establish defendant's guilt of felony murder of Rodriguez under the principle of acting in concert where it tended to show that defendant, Hunter, and Peterson sought out some Hispanics who were under a bridge and fired several warning shots; while defendant and Hunter were talking to two Hispanics who tried to come out from under the bridge, Peterson fired shots under bridge which killed Rodriguez; defendant hit Celiz with a gun and knocked him down; defendant and Peterson began kicking Celiz; Hunter told them to move Celiz out of the street, and defendant and Peterson dragged him to the grass where all three men then participated in beating him; a rea-

STATE v. ROSEBOROUGH

[344 N.C. 121 (1996)]

sonable jury could have found that the kidnapping of Celiz and the killing of Rodriguez were part of a continuous transaction; and the killing of Rodriguez was thus committed in the perpetration of the kidnapping of Celiz. Because defendant acted in concert to commit the first-degree kidnapping of Celiz, and Rodriguez was killed in the perpetration of the kidnapping, defendant is guilty of felony murder for the killing of Rodriguez.

**Am Jur 2d, Homicide §§ 37, 445.**

**Application of felony-murder doctrine where the felony relied upon is an includible offense with the homicide. 40 ALR3d 1341.**

4. **Homicide § 509 (NCI4th)— felony murder—kidnapping—acting in concert—theory of case not changed by instruction**

Where the trial court's instructions as a whole correctly conveyed to the jury the law of felony murder based on the underlying felony of kidnapping and the principle of acting in concert, the fact that the trial court also gave an acting in concert instruction using the word "murder" did not improperly change the theory of the case to add a specific intent element to the felony murder charge.

**Am Jur 2d, Homicide §§ 72-77.**

**Application of felony-murder doctrine where the felony relied upon is an includible offense with the homicide. 40 ALR3d 1341.**

5. **Criminal Law § 437 (NCI4th)— capital trial—plea to lesser offense warranted—jury argument not allowed**

The trial court did not err by refusing to permit defense counsel to argue to the jury in a first-degree murder trial that defendant should be allowed to plead guilty to second-degree murder because two equally culpable codefendants had been permitted to plead guilty to second-degree murder since the decision as to whether to enter into a plea agreement with a defendant rests in the broad discretion of the district attorney, the trial court accepts the agreement if certain conditions are met, and the jury has no role in a plea agreement.

**Am Jur 2d, Homicide § 470.**

**STATE v. ROSEBOROUGH**

[344 N.C. 121 (1996)]

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgments imposing two sentences of life imprisonment entered by Freeman, J., on 2 June 1994, in Superior Court, Forsyth County, upon jury verdicts of guilty of two counts of first-degree murder. Heard in the Supreme Court 13 February 1996.

*Michael F. Easley, Attorney General, by Dennis P. Myers, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Constance H. Everhart, Assistant Appellate Defender, for defendant-appellant.*

ORR, Justice.

Defendant was indicted on two counts of first-degree murder and one count of first-degree kidnapping. In a capital trial, the jury found defendant guilty of the first-degree kidnapping of Jose Celiz; guilty of the first-degree murder of Celiz on the basis of malice, premeditation, and deliberation, and under the felony murder rule; and guilty of the first-degree murder of Carlos Rodriguez under the felony murder rule using the kidnapping of Celiz as the predicate felony. In accordance with the jury's recommendation, the court imposed a sentence of life imprisonment for each of the murder convictions. The court also arrested judgment on the kidnapping conviction as the underlying felony in the felony murder of Rodriguez.

The evidence tended to show that on Saturday, 26 June 1993, defendant left work at about 11:00 p.m. and accompanied Jerome Peterson to the home of Jerome's brother, Tyrone Peterson. The three then went to the Broad Street bridge to talk to some Hispanic people who had "jumped" Jerome Peterson earlier. When the Hispanics ran away, defendant and the Peterson brothers returned home and went to bed.

The following night, after defendant got off work, he returned to his apartment complex, Skyline Village, and was talking to Jerome Peterson (hereinafter "Peterson") when he saw Fletcher Hunter and Kevin Noble drive up the street. Defendant flagged down the car to talk to Hunter. Peterson told Hunter that he had been "jumped" by four Hispanics the previous night. Hunter suggested they go to the bridge to find the Hispanics to "find out what's going on." Hunter testified that defendant then said, "let's go down there and get 'em."

Hunter drove defendant, Peterson, and Noble to the Broad Street bridge.

Hunter parked the car at a convenience store near the bridge. When they got out of the car, Hunter was carrying a .38-caliber semi-automatic handgun, and Noble was carrying a .25-caliber automatic handgun. Peterson led the way down a path beside the bridge. Defendant and Hunter followed him. They yelled for the Hispanics to come out from under the bridge. Defendant walked back to Noble and asked him to fire a warning shot to scare them. Noble testified that he did so and then gave the gun to defendant. Defendant walked back down the path. Someone under the bridge was talking in Spanish and laughing. Defendant told Hunter to fire the .38 "to let the people know we weren't playing." Hunter fired at a cooler on the ground.

Then defendant and Hunter returned to the street and stopped two of the Hispanics who tried to come out from under the other side of the bridge. Hunter pointed the .38 at the men and tried to talk to them in Spanish. Peterson then fired shots under the bridge using the .25-caliber handgun, which police believe killed Rodriguez. Defendant testified that Noble had given Peterson the gun, but Noble testified that he had given the gun to defendant. After he fired the shots, Peterson said, "you're not laughing now," and no one responded. The two Hispanic men that defendant and Hunter were talking to went back under the bridge. Hunter told Noble to take the car and leave, and Noble complied.

After the shots were fired, Peterson shouted that one of the Hispanic men was coming up through the bushes. Defendant testified that he had taken the gun away from Peterson, that the Hispanic ran at him, and that he (defendant) hit the Hispanic on the chin with the gun. Hunter testified that defendant asked Peterson for the gun, said he had not "pistol whipped" anybody in a long time, and hit the Hispanic on the side of the face with the gun. This Hispanic man was later identified as Jose Celiz. Celiz ran toward Hunter, and as he passed Hunter, Hunter hit Celiz on the back and knocked him to the ground.

Next, defendant and Peterson began kicking Celiz, and Hunter told them to move the man out of the street. Defendant and Peterson dragged Celiz to the grass. Hunter told them to stand the man up, they did so, and Hunter asked Celiz why they had "jumped on" Peterson. When Celiz did not answer, Hunter punched and kicked Celiz in the jaw, and Celiz fell down. Defendant, Peterson, and Hunter then con-

tinually kicked Celiz, and Peterson hit Celiz with a cane. Then, they heard sirens, and defendant, Peterson, and Hunter ran away.

Rodriguez and Celiz were both alive when they were taken to Baptist Hospital. They both died that morning, 28 June 1993, Rodriguez at 6:30 a.m., Celiz at 11:57 a.m. Later that day, defendant and Peterson were arrested at the Skyline Village apartment complex, and Hunter turned himself in. Noble gave a statement to police that evening.

Defendant first contends that the trial court erred in denying his motion to dismiss the charge of first-degree murder of Carlos Rodriguez. Defendant claims that there was insufficient evidence presented at trial, as a matter of law, from which the jury properly could find defendant guilty beyond a reasonable doubt of the first-degree murder of Rodriguez under the felony murder rule. We disagree.

> A motion to dismiss is properly denied if substantial evidence of each essential element of the offense charged is presented at trial. The evidence must be considered in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn from that evidence.

*State v. Quick*, 323 N.C. 675, 682, 375 S.E.2d 156, 160 (1989) (citation omitted).

The trial court submitted to the jury the issue of defendant's guilt or innocence of the first-degree murder of Rodriguez solely under the felony murder rule on the theory that the murder of Rodriguez was committed in the perpetration of the first-degree kidnapping of Jose Celiz. The court also submitted separately the issues of whether defendant was guilty of the first-degree kidnapping and first-degree murder of Celiz. The jury found defendant guilty of all three crimes.

[1] Defendant argues that the kidnapping of Celiz and the killing of Rodriguez were not sufficiently transactionally related to one another so as to make the Celiz kidnapping an appropriate predicate felony to support a felony murder charge for the killing of Rodriguez. N.C.G.S. § 14-17 provides: "A murder . . . committed in the perpetration or attempted perpetration of any . . . kidnapping . . . shall be deemed to be murder in the first degree." N.C.G.S. § 14-17 (Supp. 1995). The evidence is sufficient to support a charge of felony murder based on the underlying felony of kidnapping where the jury may reasonably infer that the killing and the kidnapping were part of one continuous chain of events. *See, e.g., State v. Handy*, 331 N.C. 515, 529, 419 S.E.2d 545,

552 (1992). A killing is committed in the perpetration of a kidnapping when there is no break in the chain of events so that the kidnapping and the homicide are part of the same series of events, forming one continuous transaction. *See, e.g., id.; State v. Wooten*, 295 N.C. 378, 385-86, 245 S.E.2d 699, 704 (1978). The temporal order of the killing and the felony is immaterial where there is a continuous transaction, and it is immaterial whether the intent to commit the felony was formed before or after the killing, provided that the felony and the killing are aspects of a single transaction. *State v. Handy*, 331 N.C. at 529-30, 419 S.E.2d at 552-53.

[2] After thoroughly reviewing the transcript, we conclude that the evidence, viewed in the light most favorable to the State, was sufficient for the jury to reasonably infer that the killing and the kidnapping were part of one continuous chain of events. The evidence showed that defendant, Hunter, Peterson, and Noble sought out the Hispanics under the bridge and fired several warning shots. Then defendant and Hunter stopped two of the Hispanics who tried to come out from under the bridge. While defendant and Hunter were talking to these two Hispanics, Peterson fired the shots under the bridge which the police believe killed Rodriguez. Hunter testified that Peterson then shouted to defendant and Hunter that "one of the Mexican [sic] was coming up through the bushes," and defendant and Hunter "met the Mexican as he came up out of the bushes." The "Mexican" referred to was Celiz. Hunter testified that defendant asked the Mexican where he was going and whether he was trying to get away. Then, according to Hunter, Peterson walked up, and "[defendant] asked [Peterson] for the gun and said he hadn't pistol whipped nobody in a long time." Hunter testified that defendant then hit Celiz with the gun. Defendant, Hunter, and Peterson continued the beating of Celiz, which included the commission of the first-degree kidnapping. When they heard sirens, defendant, Hunter, and Peterson ran away.

From this evidence, the jury reasonably could have inferred that the kidnapping of Celiz and the killing of Rodriguez were part of the same series of events, forming one continuous transaction—a continuous assault on the persons under the bridge by the defendant and his companions—and thus that the killing of Rodriguez was committed in the perpetration of the kidnapping of Celiz. *See State v. Jaynes*, 342 N.C. 249, 274-75, 464 S.E.2d 448, 464 (1995) (where felony murder was predicated on an arson that was committed three and one-half hours after the murder and after defendant had left the site of the murder

and returned, the jury reasonably could find that the crimes were part of one continuous transaction), *cert. denied,* —— U.S. ——, —— L. Ed. 2d ——, 64 U.S.L.W. 3855 (1996); *State v. Moore,* 339 N.C. 456, 461-62, 451 S.E.2d 232, 234 (1994) (where felony murder was predicated on discharging a firearm into occupied property, the victim did not break the chain of events by going outside to defend his home).

[3] Defendant also argues that the evidence was insufficient to establish his guilt under the acting in concert principle. The prosecution of defendant for first-degree murder rests on both the felony murder rule and the principle of acting in concert. We addressed the relationship of these legal theories in *State v. Thomas*:

> Under the felony murder rule a homicide committed in the perpetration of one of the statutorily specified felonies is first degree murder. N.C.G.S. § 14-7. Discharging a firearm into an occupied structure is a felony which will support a first degree felony murder prosecution. Thus when persons act in concert to commit the felony of discharging a firearm into an occupied structure each person is guilty not only of that felony but for any homicide committed in its perpetration.

*State v. Thomas,* 325 N.C. 583, 595, 386 S.E.2d 555, 561-62 (1989) (citations omitted). Likewise, first-degree kidnapping is a felony which will support a first-degree felony murder prosecution. N.C.G.S. § 14-17. Thus, when persons act in concert to commit the felony of first-degree kidnapping, each person is guilty not only of first-degree kidnapping, but for any homicide committed in its perpetration.

The evidence is virtually uncontradicted that defendant, Peterson, and Hunter acted in concert to commit the continuous transaction of assault on the Hispanics as well as the kidnapping of Celiz. Hunter directed defendant and Peterson to move Celiz out of the road, and they did so. All three then participated in the beating of Celiz. Defendant does not challenge the sufficiency of the evidence to support any of the elements of first-degree kidnapping. As we held above, a reasonable jury could have found that the kidnapping of Celiz and the killing of Rodriguez were part of a continuous transaction; and that thus, the killing of Rodriguez was committed in the perpetration of the kidnapping of Celiz. Therefore, because defendant acted in concert to commit the first-degree kidnapping of Celiz, and Rodriguez was killed in the perpetration of the kidnapping, defendant is guilty of felony murder for the killing of Rodriguez.

STATE v. ROSEBOROUGH

[344 N.C. 121 (1996)]

**[4]** Defendant next claims that there was insufficient evidence from which the jury could find defendant guilty beyond a reasonable doubt of the first-degree murder of Rodriguez on the theory of guilt presented to the jury through the trial court's instructions. He argues that the trial court's instructions for the felony murder of Rodriguez required the jury to find that defendant and Peterson had a common purpose to commit murder and that the evidence did not support such a conclusion. Citing *Presnell v. Georgia*, 439 U.S. 14, 58 L. Ed. 2d 207 (1978), and *State v. Smith*, 65 N.C. App. 770, 310 S.E.2d 115, *modified and aff'd*, 311 N.C. 145, 316 S.E.2d 75 (1984), defendant relies on the rule that a defendant may not be convicted of an offense on a theory of guilt different from that presented to the jury. However, we conclude that this rule is inapplicable to the case at bar because the trial court's jury instructions did not present a theory of guilt different from that on which defendant was convicted.

"[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146-47, 38 L. Ed. 2d 368, 373 (1973), *quoted in State v. McNeil*, 327 N.C. 388, 392, 395 S.E.2d 106, 109 (1990), *cert. denied*, 499 U.S. 942, 113 L. Ed. 2d 459 (1991). "If the charge as a whole presents the law fairly and clearly to the jury, the fact that isolated expressions, standing alone, might be considered erroneous will afford no ground for a reversal." *State v. Terry*, 337 N.C. 615, 623, 447 S.E.2d 720, 724 (1994).

A review of the entire set of instructions given to the jury reveals that the court instructed the jury on the murder of Rodriguez on the theory of felony murder based on the underlying felony of kidnapping, while applying the theory of acting in concert. The court correctly instructed the jury that "the defendant has also been accused of first degree murder in the perpetration of a felony which is the killing of a human being by a person who committed—committing or attempting to commit the kidnapping." The court also gave several instructions on acting in concert. Defendant's argument is based on the following instruction, to which he did not object:

And then, as I told you earlier, for a person to be guilty of a crime, it is not necessary that he himself do all the acts necessary to constitute the crime. If two or more persons act together with a common purpose to commit murder, each of them is held responsible for the acts of the others done in the commission of that crime.

Defendant claims that this instruction changed the theory of guilt to require the jury to find that defendant possessed the specific intent to murder Rodriguez, something akin to premeditation and deliberation. We disagree.

We first note that this instruction is the same as the pattern jury instruction for acting in concert, N.C.P.I.—Crim. 202.10 (1994), with the word "murder" used to fill in the blank for the relevant crime. The court also instructed the jury that

> for a person to be guilty of a crime, it is not necessary that he himself do all of the acts necessary to constitute the crime. If two or more persons act together with a common purpose to commit a kidnapping, each of them is held responsible for the acts of the others done in the commission of that crime.

This acting in concert instruction is more applicable to felony murder based on kidnapping. The court also gave the following charge relating to the felony murder of Rodriguez:

> So, members of the jury, I will charge that if you find from the evidence and beyond a reasonable doubt that on or about the alleged date the defendant, acting either by himself or acting together with others, unlawfully removed a person from one place to another and that the person did not consent to this removal and that this was done for the purpose of doing serious bodily injury to the person removed and that this removal was a separate and complete act separate and apart from the injury, and that the person removed had been seriously injured; and that while committing a kidnapping, the defendant, acting either by himself or acting together with others, killed the victim and that the defendant's act was a proximate cause of the victim's death, then it would be your duty to return a verdict of guilty of first degree murder.

This paragraph is the direct charge to the jury and requires the jury to find that while committing a kidnapping, defendant, acting either by himself or acting together with others, killed the victim. This charge does not require the jury to find that defendant possessed a specific intent to kill Rodriguez. Also, the court did not list intent as an element when it listed for the jury the elements of felony murder. This omission was contrasted in the jurors' minds with the court's charge on the first-degree murder of Celiz on the basis of malice, premeditation, and deliberation. The felony murder charge combined both with

STATE v. ROSEBOROUGH

[344 N.C. 121 (1996)]

the court's list of elements of felony murder and with the court's acting in concert instruction that "[i]f two or more persons act together with a common purpose to commit a kidnapping, each of them is held responsible for the acts of the others done in the commission of that crime" correctly conveyed to the jury the law of felony murder based on kidnapping and the acting in concert principle. The fact that the court also gave an acting in concert instruction using the word "murder" did not alter the theory of the case. This instruction was also a correct statement of the legal principle of acting in concert. It is simply inapplicable to felony murder, which has no element of intent.

We conclude that, when considered in light of the jury instructions as a whole, the court's inadvertent inclusion of the acting in concert instruction using the word "murder" failed to change the theory of the case such as to add a specific intent element to the felony murder of Rodriguez. Thus, the court instructed the jury on the murder of Rodriguez on the theory of felony murder based on the underlying felony of kidnapping, while applying the theory of acting in concert. We held above that there was sufficient evidence presented at trial, as a matter of law, from which the jury properly could find defendant guilty beyond a reasonable doubt of the first-degree murder of Rodriguez under this theory of guilt. This assignment of error is overruled.

[5] Defendant finally contends that the trial court erred during closing arguments by preventing the defense attorney from arguing to the jury that because equally culpable codefendants, Fletcher Hunter and Kevin Noble, had been permitted to plead guilty to lesser charges, defendant also should be allowed to plead guilty to a lesser charge. We disagree.

In accordance with N.C.G.S. § 15A-1055(b), defense counsel was allowed to make a full argument to the jury on the impact of the plea agreements of Hunter and Noble upon their credibility as witnesses. However, defense counsel next attempted to make the following argument:

> And all I'm asking is that Mr. Roseborough be treated fairly. If [Hunter and Noble are] allowed to plead to second degree murder and they are just as culpable or more culpable than Mr. Roseborough, then why shouldn't he be allowed—

> [PROSECUTOR]: Objection to that argument, Your Honor.

> THE COURT: Sustained.

[DEFENSE COUNSEL]: Why shouldn't he be allowed to plead to that?

[PROSECUTOR]: Ask the jury to disregard that argument, Your Honor.

THE COURT: Motion allowed.

The trial court properly sustained the prosecutor's objection to this argument.

The decision of whether to enter into a plea agreement with a defendant is in the broad discretion of the district attorney. The district attorney has broad discretion to determine whether to try a defendant for first-degree murder, or to try a defendant for a lesser offense, or to accept a plea to second-degree murder. *State v. Lineberger*, 342 N.C. 599, 605, 467 S.E.2d 24, 27 (1996). "Our Constitution expressly provides that: 'The District Attorney shall . . . be responsible for the prosecution on behalf of the State of all criminal actions in the Superior Courts of his district . . . .' " *State v. Camacho*, 329 N.C. 589, 593, 406 S.E.2d 868, 871 (1991) (quoting N.C. Const. art. IV, § 18). "The clear mandate of this provision is that the authority to prosecute criminal actions is vested with the district attorney." *State v. Sturgill*, 121 N.C. App. 629, 638, 469 S.E.2d 557, 562 (1996) (citing *State v. Camacho*, 329 N.C. at 593, 406 S.E.2d at 871). This authority includes the discretion to enter into plea agreements. *Id.* After the district attorney and a defendant enter into a plea agreement, the trial court is informed of the substance of the plea agreement, and the trial court accepts the agreement if certain conditions are met. *See* N.C.G.S. § 15A-1023 (1988). Thus, a jury has no role in a plea agreement. Therefore, defendant's argument to the jury asking why he should not be allowed to plead guilty to second-degree murder was improper. The court did not err in sustaining the prosecutor's objection to this argument. This assignment of error is overruled.

For the foregoing reasons, we find that defendant received a fair trial, free from prejudicial error.

NO ERROR.