STATE OF NORTH CAROLINA v. TONY LAMONT FAISON

No. 18A91

(Filed 6 December 1991)

1. **Evidence and Witnesses § 264 (NCI4th)— "first aggressor" exception—peacefulness of victim—plain meaning**

    The plain meaning of the "first aggressor" exception of Rule of Evidence 404(a)(2) is abundantly clear: if a defendant presents evidence that the victim was the first aggressor in the confrontation which led to the victim's death, the State can offer evidence of the victim's peacefulness. N.C.G.S. § 8C-1, Rule 404(a)(2).

    **Am Jur 2d, Evidence §§ 339-342; Homicide §§ 308, 309.**

    **Right of prosecution, in homicide case, to introduce evidence in rebuttal to show good, quiet, and peaceable character of deceased. 34 ALR2d 451.**

2. **Evidence and Witnesses § 264 (NCI4th)— victim's forcing of oral sex—first aggressor—evidence of victim's peacefulness**

    Defendant's evidence that a murder victim forced him at gunpoint to perform oral sex triggered the "first aggressor" exception of Rule 404(a)(2) so that the State could introduce evidence that the victim was a peaceful man.

**Am Jur 2d, Evidence §§ 339-342; Homicide §§ 308, 309.**

**Right of prosecution, in homicide case, to introduce evidence in rebuttal to show good, quiet, and peaceable character of deceased. 34 ALR2d 451.**

3. **Evidence and Witnesses § 264 (NCI4th)— peacefulness of victim — first aggressor evidence as prerequisite**

The State cannot introduce evidence of a murder victim's peacefulness until after defendant has put forward evidence that the victim was the first aggressor. Therefore, the trial court erred by allowing the State to introduce evidence in its case-in-chief that a murder victim had a reputation for peacefulness, but defendant was not prejudiced by this error where defendant's entire defense was based on his testimony that the victim was the aggressor, and the State thus would have properly been allowed during rebuttal to introduce its evidence that the victim had a reputation for peacefulness.

**Am Jur 2d, Evidence §§ 339-342; Homicide §§ 308, 309.**

**Right of prosecution, in homicide case, to introduce evidence in rebuttal to show good, quiet, and peaceable character of deceased. 34 ALR2d 451.**

4. **Evidence and Witnesses § 263 (NCI4th)— modification of toothbrush in jail — irrelevancy — improper character evidence — admission as harmless error**

A toothbrush with a piece of metal attached to the end and testimony by a prison guard that this modified toothbrush was made by defendant while in jail awaiting trial and would be considered a weapon under prison regulations should have been excluded as irrelevant under Rule of Evidence 402 or as improper character evidence under Rule of Evidence 404. However, defendant failed to show that he was prejudiced by the admission of this evidence. N.C.G.S. § 8C-1, Rules 402 and 404.

**Am Jur 2d, Evidence §§ 339-341; Homicide §§ 298, 299; Witnesses § 564.**

5. **Robbery § 4.3 (NCI3d)— armed robbery — sufficiency of evidence — property not taken as afterthought**

The State's evidence did not show that defendant took the victim's property only as an "afterthought" following the

victim's death but was sufficient to support defendant's conviction of armed robbery where it tended to show that defendant was short on cash; immediately after passing the victim's house, he stated that the victim owed him money and he was going after it; the victim was struck more than thirty times with an ax that was kept outside his house in the carport; the house was ransacked; and items belonging to the victim were stolen. Furthermore, it was immaterial whether the intent was formed before or after force was used upon the victim provided the theft and force were aspects of a single transaction.

**Am Jur 2d, Robbery §§ 14, 16, 19, 23.**

**6. Robbery § 4.3 (NCI3d) — armed robbery — conviction not based on taking of own property**

There was no possibility that defendant was convicted of armed robbery on the basis of a taking of his own property because (1) there was evidence that defendant had pawned his television set with the victim and the set was not found at the victim's house, (2) the prosecutor stated during his closing argument that he believed defendant had taken the television from the house but had hidden it when it became too heavy to carry, and (3) the trial judge used the word "property" in the instructions to describe the items defendant was accused of taking, where the prosecutor was merely responding to defendant's contention that someone else had ransacked the victim's house and stolen items which defendant denied taking; the prosecutor specifically mentioned items which defendant admitted taking, i.e., a revolver and watch belonging to the victim, when discussing with the jury the elements necessary to prove armed robbery; the prosecutor also told the jury that a defendant can only be convicted of armed robbery for taking property to which he is not entitled; and the trial judge's instructions were replete with references to the fact that defendant could not be convicted of armed robbery unless he took property "that he was not entitled to take."

**Am Jur 2d, Robbery §§ 16, 19.**

**7. Evidence and Witnesses § 3098 (NCI4th); Extradition § 1 (NCI3d) — resistance of extradition — cross-examination of defendant — admissibility for impeachment**

The prosecutor's cross-examination of defendant as to whether he had fought extradition from Pennsylvania from

STATE v. FAISON

[330 N.C. 347 (1991)]

December 1988 until March 1989 was properly permitted to impeach defendant's testimony concerning the reason for his flight to Pennsylvania and did not burden defendant's due process right to resist extradition where defendant testified that he went to Pennsylvania only to resettle his family and not to evade arrest for murder and armed robbery, and defendant first broached the subject of his extradition when he testified on direct examination that he had an extradition hearing in Philadelphia with the assistance of counsel.

**Am Jur 2d, Evidence §§ 280-282, 1128.**

8. **Homicide § 25.2 (NCI3d)— premeditation and deliberation— lack of provocation—instruction not plain error**

Assuming *arguendo* that there was error in the trial court's instruction, to which defendant failed to object at trial, that the jury could infer premeditation and deliberation from, among other things, "the lack of provocation by the victim," defendant failed to meet the heavy burden placed on him under the plain error rule to show that, absent the error, the jury probably would have reached a different verdict.

**Am Jur 2d, Homicide §§ 498, 501.**

APPEAL as of right pursuant to N.C.G.S. § 7A-27(a) from judgment imposing sentence of life imprisonment entered by *Reid, J.,* at the 10 July 1989 Criminal Session of Superior Court, DUPLIN County, upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to additional judgment allowed by the Supreme Court 29 January 1991. Heard in the Supreme Court 17 October 1991.

*Lacy H. Thornburg, Attorney General, by Steven E. Bryant, Special Deputy Attorney General, and H. Jefferson Powell, Special Counsel to the Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Mark D. Montgomery, Assistant Appellate Defender, for defendant-appellant.*

FRYE, Justice.

On 12 December 1988, defendant was indicted by a Duplin County grand jury for the first-degree murder of Joseph Allen "John Henry" Rivenbark (John Henry). On 22 June 1989, another Duplin County grand jury indicted defendant for robbery with a

STATE v. FAISON

[330 N.C. 347 (1991)]

dangerous weapon, specifically charging him with using an axe to rob John Henry of a .22-caliber revolver, wallet, wristwatch and gold wedding band. Defendant pleaded not guilty. On 24 July 1989, a jury returned verdicts of guilty of first-degree murder (on theories of both felony murder and premeditation and deliberation) and robbery with a dangerous weapon (armed robbery). After the jury was unable to reach a unanimous verdict with respect to sentencing on the murder conviction, defendant was sentenced by Judge Reid to life imprisonment. Defendant was also sentenced to a consecutive twenty-year prison term on the armed robbery charge.

Defendant argues that he is entitled to a new trial because of errors committed by the trial judge. We find no prejudicial error and therefore conclude that defendant is not entitled to a new trial.

I.

The question before the Duplin County jury which convicted defendant of first-degree murder and armed robbery was not *whether* defendant killed John Henry with an axe and took some of his property. The question was *why*. Defendant admits killing John Henry. Defendant also admits taking three firearms, including the .22-caliber revolver, and a wristwatch which belonged to John Henry; he denies taking the wallet and ring. The ultimate question for the jury was whether to believe the State's explanation that defendant murdered John Henry with premeditation and deliberation in the course of committing armed robbery or to accept defendant's explanation that he killed John Henry in self-defense and took the property to raise money to relocate his family.

The State, through its evidence presented at trial, painted the following picture:

On the evening of Thursday, 3 November 1988, defendant visited several "drink houses" in Greenevers. He was short on cash, to the point of having to borrow one dollar for a shot of whiskey. Around 8 p.m. defendant accepted a ride from Marilyn Murphy and Bud Matthews, who were leaving the drink house on their way home to Wallace. Defendant told them he was going to work at the N & W grocery store in Wallace. After going about a quarter of a mile, they passed by John Henry's house, and defendant asked the driver to stop. Ms. Murphy testified that defendant said, "that

MF owes me $80 and I'm going after it." Ms. Murphy, when pressed by the prosecutor, said defendant used the full word m..... f..... Mr. Matthews testified that defendant said, "this son of a bitch owes me $80. He's going to pay me." Defendant got out of the car. Mr. Matthews and Ms. Murphy continued on their way.

On Sunday, 6 November 1988, John Henry's body was found. He had been struck with an axe at least thirty times, according to the testimony of Dr. Thomas Clark who performed the autopsy. Dr. Clark testified that it appeared likely that at least five blows were struck to the back of the head and two additional blows to the back itself. The injuries were of two types, Dr. Clark testified, blunt force and chopping.

Four witnesses, including John Henry's brother and brother-in-law, testified that John Henry owned an axe, but they had never seen it inside the house. Instead, they testified, the axe was kept outside under the carport.

Duplin County Sheriff's Deputy W.E. Ramsey testified that he and an SBI agent "processed" the homicide location. Deputy Ramsey testified that the house was "turned upside down," with drawers pulled out and clothing and boxes littering the floors. Deputy Ramsey also testified that the ignition switches of two vehicles outside John Henry's house had been damaged.

Richard Honeycutt, owner of Honeycutt's Pawn Shop, testified that a man identifying himself as defendant pawned a gold wedding band on 7 November 1988.

The State also presented evidence that defendant quit his job on 6 November 1988, attempted to sublet his apartment, and then moved with his wife and children to Philadelphia.

Defendant testified in his own behalf and told the following story:

On the night John Henry was killed, defendant accepted a ride from Ms. Murphy and Mr. Matthews. Once they got started, however, Mr. Matthews told defendant that they were not going to Wallace. Defendant then asked to get out of the car, figuring he would walk to John Henry's house and ask him for a ride home. Defendant told Ms. Murphy and Mr. Matthews that John Henry owed him a favor, and that John Henry owed him some money. Defendant denied making the statements attributed to him by Ms. Murphy or Mr. Matthews. Defendant testified that the

last time he had seen John Henry, he (defendant) had helped him with something in the yard, and that defendant thought John Henry might repay the favor by giving him a ride home to Wallace.

Defendant testified that John Henry did not want to drive to Wallace that night because he had been drinking; however, he told defendant that he could spend the night. Defendant agreed and the two men drank some beer. Defendant then went to sleep on the couch.

According to defendant's testimony, he was awakened a few hours later by John Henry, who was standing over him with a gun, wearing only his underwear and tee shirt. John Henry threatened to kill him if he (defendant) did not perform oral sex on him. Defendant said he was scared for his life and so did as he was told. John Henry then told defendant to go into the bedroom and drop his pants. When they got to the bedroom, defendant testified that he panicked, knocked the gun out of John Henry's hand and a fight ensued. Defendant ran from the bedroom and John Henry followed, threatening to kill him. Defendant testified that he was scared and grabbed an axe that was near the door. Defendant swung the axe at John Henry, hoping to hit him with the blunt end, but realized that he had struck him with the sharp end. John Henry then went bleeding into the bathroom, looked at defendant and lunged at him. Defendant hit him several more times.

Defendant testified that he panicked and decided to move his family to Philadelphia where his wife's family lived. Defendant explained that he took three firearms and a watch to raise money for the trip. He denied, however, taking the wallet or ring, ransacking the house or damaging the ignition switches. Defendant also testified that he pawned his own wedding ring, which he had recently purchased. Defendant had not told his wife about the wedding ring because she did not like jewelry and would have forced him to get rid of it.

Defendant testified that after moving with his family to Philadelphia, he got a job fixing houses and also worked part time delivering Christmas trees. On 7 December 1988, after learning that police were looking for him, defendant turned himself in to Philadelphia police. Defendant was extradited to North Carolina to stand trial.

Defendant argues on appeal that errors committed by the trial judge entitle him to a new trial on the murder and armed robbery convictions. Defendant assigns four errors. Each will be discussed in turn, with additional facts provided as necessary.

II.

In his first assignment of error, defendant argues that the trial court erred by: (1) allowing the State to present in its case-in-chief testimony from seven witnesses that John Henry was a peaceful man; and (2) allowing the State to introduce what defendant believes to be evidence of defendant's violent character.

Defendant suggests that evidence as to John Henry's peaceful character was improperly admitted pursuant to the "first aggressor" exception to North Carolina Rule of Evidence 404(a)(2) because that exception is generally used in the "traditional self-defense case," not in sexual assault cases. Defendant's argument is wholly without merit.

North Carolina Rule of Evidence 404(a) states:

*Character evidence generally*—Evidence of a person's character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) Character of accused—Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;

(2) Character of victim—Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

(3) Character of witness—Evidence of the character of a witness, as provided in Rules 607, 608, and 609.

N.C.G.S. § 8C-1, Rule 404(a) (1988).

[1] Defendant argues that the "first aggressor" exception is generally used where there is evidence of a fight and the question is who started the fight. Regardless of how this exception is *generally* used, the plain meaning of the "first aggressor" exception is abundantly clear: if a defendant presents evidence that the victim was

the first aggressor in the confrontation which led to the victim's death, the State can offer evidence of the victim's peacefulness.

[2] In this case, defendant claimed that John Henry forced him at gunpoint to perform oral sex. This obviously triggers the "first aggressor" exception.

Even if the "first aggressor" rule applies, defendant argues, the trial court erred by allowing the State to introduce its evidence of peacefulness in its case-in-chief, instead of in rebuttal as required by the rule. We agree, but conclude that the error was not prejudicial.

The State concedes that under this Court's case law, decided prior to the adoption of the Rules of Evidence, the State could not introduce evidence of a victim's peacefulness until *after* the defendant had introduced evidence of the victim's violent character. *State v. Champion*, 222 N.C. 160, 161, 22 S.E.2d 232, 233 (1942). *Champion*, however, dealt with the common law rule that a defendant pleading self-defense could introduce "evidence as to the general character of the deceased as a violent and dangerous man . . . ." *Id.* Only after a defendant had introduced such *general character evidence* could the State offer rebuttal evidence concerning "the general reputation of the deceased for peace and quiet." *Id.* Thus, prior to the adoption of Rule 404(a)(2), the State could not introduce rebuttal evidence *any* time a defendant in a homicide case claimed the victim was the first aggressor. *See* 1 Henry Brandis, Jr., *Brandis on North Carolina Evidence* § 106, at 466 n.68 (3d ed. 1988).

Although Rule 404(a)(2) adds the "first aggressor" exception to the general rule prohibiting character evidence, Professor Brandis states that "[u]nder the (new) rule, as under prior case law, the State may not, in a homicide case, introduce evidence of the victim's peaceful character except in rebuttal." *Id.* The State, however, refers this Court to another noted commentator who concludes under the parallel federal rule that the State can introduce such evidence in its case-in-chief "once it is somehow established to an acceptable level of probability that the defendant, as part of his case, will offer evidence that the victim was the first aggressor." 1 John H. Wigmore, *Evidence* § 63, at 1370 n.5 (Peter Tillers rev. 1983). The State invites this Court to adopt the Wigmore approach and uphold the trial court's ruling in this case because defendant's counsel told jurors during his opening statement that the evidence

would show that John Henry initiated the confrontation which led to his death.

**[3]** We agree with Professor Brandis and hold true to our prior case law that the State cannot introduce evidence of the victim's peacefulness until after defendant has put forward evidence that the victim was the first aggressor. *See Champion*, 222 N.C. at 161, 22 S.E.2d at 233. We believe this is consistent with the plain meaning of Rule 404(a)(2), which states that the prosecution can introduce evidence of peacefulness "to rebut *evidence* that the victim was the first aggressor." N.C.G.S. § 8C-1, Rule 404(a)(2) (emphasis added). Opening statements by attorneys are not evidence. *State v. Lewis*, 321 N.C. 42, 49, 361 S.E.2d 728, 733 (1987). Therefore, the prosecution should have waited until rebuttal to introduce its evidence concerning the peacefulness of John Henry. We conclude, therefore, that the trial court erred by allowing the State to introduce evidence in its case-in-chief that John Henry had a reputation for peacefulness.

We hold, however, that this error did not prejudice defendant in this case. Defendant's entire defense was based on his testimony that John Henry was the first aggressor. Thus, the State would have been allowed during rebuttal to introduce its evidence that John Henry had a reputation for peacefulness. Because the same evidence would have been admissible later in the trial, defendant cannot demonstrate a reasonable possibility that a different result would have been reached had the evidence been excluded during the State's case-in-chief. N.C.G.S. § 15A-1443(a) (1988).

**[4]** Defendant also argues in the same assignment of error that the trial judge erred by allowing into evidence a toothbrush with a piece of metal can attached to the end, and testimony by a prison guard that defendant made this "weapon" while in jail awaiting trial. This evidence, argues defendant, was introduced in an effort to characterize defendant as a violent person and is inadmissible under Rule 404. Again, we hold that the trial judge erred, but that the error was not prejudicial.

A prison guard testified that he confiscated from defendant a toothbrush with a piece of metal can attached to the end. The guard testified that the modified toothbrush would be considered a weapon under prison regulations. On cross-examination, the guard said that defendant told him the toothbrush was used to cut card-

board boxes for drawings, and that he (the guard) had never seen defendant use the toothbrush as a weapon.

A trustee at the jail also testified about the toothbrush. The trustee said that he reported the toothbrush to prison authorities. On cross-examination, the trustee said that defendant told him the toothbrush was used to cut a cardboard box to mount a drawing he made for his wife. The trustee testified that he saw the drawing that was mounted, and that he had never seen defendant use the toothbrush in an attempt to hurt anyone.

The State concedes the toothbrush evidence was arguably inadmissible, but for different reasons than those cited by defendant. The State argues that the toothbrush was part of a larger package of evidence that the prosecution hoped to introduce under Rule 801(d)(A) (admissions by a party opponent). That evidence would have "amounted to an admission and acknowledgment of guilt," according to the State's brief. However, in response to objections by defendant's counsel at trial, the trial judge held two *voir dire* hearings and excluded all the evidence the prosecutor wished to introduce, except the toothbrush, the metal can used to modify the toothbrush, and the testimony concerning the toothbrush. The State acknowledges that given the trial court's decision to exclude most of the evidence, the toothbrush and accompanying testimony were arguably irrelevant and thus not admissible under Rule 402 (irrelevant evidence inadmissible).

We conclude that the toothbrush and accompanying testimony should have been excluded under Rule 404 or Rule 402. However, given the substance of the testimony, the cross-examination of both witnesses, and the other evidence presented at trial, we do not believe defendant has carried his burden under N.C.G.S. § 15A-1443(a) of proving that, but for the evidence in question, there was a reasonable possibility that a different result would have been reached. *See State v. Groves*, 324 N.C. 360, 372, 378 S.E.2d 763, 771 (1989) (assuming error under Rule 404(b), defendant not prejudiced by evidence that he possessed a knife, set a fire, and made threats while in jail awaiting trial for murder). Thus, the error was not prejudicial.

In his next assignment of error, defendant argues that the trial court erred by denying his motion to dismiss the armed robbery charge because: (1) there was insufficient evidence to allow the charge to go to the jury; and (2) it was probable that the

jury convicted defendant for taking his own property. We hold the trial court did not err by denying the motion to dismiss.

The rules governing motions to dismiss in criminal cases are well settled and familiar. *State v. Vause*, 328 N.C. 231, 236-37, 400 S.E.2d 57, 61 (1991); *State v. Earnhardt*, 307 N.C. 62, 65-68, 296 S.E.2d 649, 651-53 (1982); *State v. Powell*, 299 N.C. 95, 98-99, 261 S.E.2d 114, 117 (1980). When a defendant moves for dismissal, the trial judge must determine whether there is "substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the crime." *Vause*, 328 N.C. at 236, 400 S.E.2d at 61. The term "substantial evidence" is deceptive because, as interpreted by this Court in the context of a motion to dismiss, it is interchangeable with "more than a scintilla of evidence." *Earnhardt*, 307 N.C. at 66, 296 S.E.2d at 652. Thus, the true test of whether to grant a motion to dismiss is whether the evidence, considered in the light most favorable to the State, is "existing and real, not just seeming or imaginary." *Id.* If the evidence will permit a reasonable inference that the defendant is guilty of the crime charged, the trial judge should allow the case to go to the jury. *Vause*, 328 N.C. at 237, 400 S.E.2d at 61. This is true whether the evidence is direct, circumstantial or both. *Id.*

**[5]** Armed robbery under N.C.G.S. § 14-87 consists of the following essential elements:

> (1) the unlawful taking or an attempt to take personal property from the person or in the presence of another (2) by use or threatened use of a firearm or other dangerous weapon (3) whereby the life of a person is endangered or threatened.

*State v. Small*, 328 N.C. 175, 181, 400 S.E.2d 413, 416 (1991). "The gist of the offense is not the taking but the taking by force or putting in fear." *State v. Powell*, 299 N.C. 95, 102, 261 S.E.2d 114, 119 (1980). Defendant argues that he took John Henry's property as an "afterthought" and that there is no more than a "suspicion" that he intended to commit armed robbery. Defendant cites *Powell* to support his argument. In *Powell*, the defendant was charged with first-degree murder, first-degree rape and armed robbery. This Court concluded that the "arrangement of the victim's body and the physical evidence indicate she was murdered during an act of rape. We believe that even construing the evidence in a light most favorable to the State, it indicates only that defendant took the objects as an afterthought after the victim had died." *Id.*

This case is distinguishable from *Powell*. Here, the State presented evidence which showed that: (1) defendant was short on cash; (2) immediately after passing John Henry's house, he stated in no uncertain terms that the "m..... f..... owes me $80 and I'm going after it"; (3) John Henry was struck more than 30 times with an axe that was kept outside in the carport; (4) the house was ransacked; and (5) items were stolen. Defendant does not deny killing John Henry or taking three firearms and a watch, but claims he killed John Henry in self-defense and took the items to finance the relocation of his family. We hold that this evidence, when viewed in the light most favorable to the State, is sufficient to "permit a *reasonable inference* that the defendant is guilty of the crime charged." *Vause*, 328 N.C. at 237, 400 S.E.2d at 61. Furthermore, it is immaterial whether the intent was formed before or after force was used upon the victim, provided that the theft and force are aspects of a single transaction. *See State v. Green*, 321 N.C. 594, 365 S.E.2d 587, *cert. denied*, 488 U.S. 900, 102 L. Ed. 2d 235 (1988).

[6] Defendant also argues that the trial judge erred by not dismissing the armed robbery charge because of the possibility that the jury convicted him of taking his own property. Defendant's argument is based on the following: (1) there was evidence presented at trial that defendant had "pawned" his television set with John Henry, and that the television was not found at the house; (2) during his closing argument, the prosecutor said that he believed the defendant had taken the television from the house, but had hidden it someplace when it became too heavy to carry; and (3) the trial judge, when instructing the jury on the crime of armed robbery, used the word "property" to describe the items the defendant was accused of taking. Thus, argues defendant, the jury may have believed that he took the pistol and watch as an afterthought, but nevertheless convicted him for taking his own television set, property to which he was entitled. We disagree.

The prosecutor's statement referred to by defendant was made in the context of arguing that defendant's testimony was not credible. The prosecutor was attempting to respond to defendant's suggestion that someone else had ransacked John Henry's house and stolen those items which defendant denied taking. It was in this context that the prosecutor suggested that the missing television set was taken by defendant. However, when discussing with the jury the elements necessary to prove armed robbery, the prosecutor

specifically mentioned only the items which defendant admitting taking, *i.e.*, the revolver and watch. In addition, the prosecutor told the jury that a defendant can only be convicted of armed robbery for taking property to which he is not entitled.

Similarly, the judge's instructions to the jury were replete with references to the fact that the defendant could not be convicted of armed robbery unless he took property "that he was not entitled to take." While in hindsight it might have been better for the trial judge to specifically name the items in question instead of using the general word "property," we believe that in the context of the entire jury charge, it was perfectly clear that defendant could be convicted of armed robbery only for taking property to which he was not entitled.

[7] In his next assignment of error, defendant argues that the trial judge erred by allowing the prosecutor to cross-examine him about his efforts to resist extradition from Pennsylvania to North Carolina. Defendant argues that he has a federal due process right to resist extradition and that the State's cross-examination somehow burdened that right or punished defendant for exercising that right. The State responds that defendant has no constitutional right to resist extradition, and that the prosecutor's questions were intended to undermine defendant's credibility.

Assuming defendant has a due process right to have North Carolina establish the legitimacy of its charge against him, we fail to see how this right was burdened or how defendant was punished by the State's cross-examination at trial. A review of the record reveals that it was *defendant* who brought up the subject of extradition during his testimony explaining why he left North Carolina. Defendant, on direct examination, told the jury that he had anticipated his arrest and therefore decided to move his wife and children to Philadelphia. It was this desire to resettle his family, not a desire to evade arrest, which caused him to leave the state, according to defendant. In fact, when notified that North Carolina police were in Philadelphia looking for him, defendant testified that he called Philadelphia police and turned himself in. It was in this context that defendant's attorney asked defendant whether he and his court-appointed attorney in Philadelphia had waived extradition or had, instead, gone through a hearing. Defendant responded that he had a hearing prior to his extradition. On cross-examination, the prosecutor asked defendant whether he had

voluntarily come back to North Carolina or whether he had fought extradition from December 1988 until March 1989. It is this question about which defendant now complains.

We agree with the State that the prosecutor had a right to impeach defendant's testimony concerning his flight to Philadelphia and subsequent return to North Carolina. Defendant's ability to fight his extradition prior to trial obviously was not "burdened" in the least by questions asked during trial. In fact, by his own testimony, defendant acknowledged that he had an extradition hearing in Philadelphia with the assistance of counsel. He also was not "punished" for his decision to fight extradition. It was *defendant* who broached the subject; it was *defendant* who opened the door for cross-examination. A testifying defendant is subject to impeachment by cross-examination generally to the same extent as any other witness. *State v. Lester,* 289 N.C. 239, 245, 221 S.E.2d 268, 272 (1976). We hold that the trial court did not err in allowing the cross-examination in question.

[8] In defendant's final assignment of error, he argues that the trial court erred by instructing the jury that it could infer premeditation and deliberation from, among other things, the lack of provocation by the victim. Defendant argues in his brief that the instruction in this case allowed jurors to find premeditation and deliberation on a theory not supported by the evidence. Defendant spent virtually all his time at oral argument, however, arguing that this instruction, whether given in this case or any other first-degree murder case, is faulty because it: (1) impermissibly shifts the burden of proof to the defendant, requiring him to come forward with evidence of provocation in order to rebut an inference of lack of provocation; and (2) may result in jury confusion in that it does not specify what type of provocation is at issue, *i.e.,* "legal provocation," which reduces murder to manslaughter, or "ordinary provocation," which reduces first-degree murder to second-degree murder.

Defendant concedes that he did not object to this instruction at trial and therefore may not assign it as error. N.C. R. App. P. 10(b)(2). Nevertheless, he asks this Court to consider the merits of his argument under the "plain error" rule. N.C. R. App. P. 10(c)(4). In order to prevail under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different verdict. *State v. Robinson,* 330 N.C. 1, 22, 409 S.E.2d 288, 300

(1991). Even assuming, *arguendo*, that there was error in this instruction, defendant cannot meet this heavy burden.[1]

Defendant objects to one clause of one sentence in a long and detailed set of jury instructions. The portion of the jury charge objected to by defendant is the underlined clause in the following excerpt of the jury charge:

> Neither premeditation nor deliberation are usually susceptible of direct proof. They may be proved by circumstances from which they may be inferred such as the lack of provocation by the victim, conduct of the defendant before, during or after the killing, threats and declarations of the defendant, use of grossly excessive force, infliction of lethal wounds after the victim has fell [sic], brutal or vicious circumstances of the killing, or the manner which or means by which the killing was done . . . .

The jury was also instructed separately concerning the definitions of premeditation and deliberation.

After the jury instructions were delivered, jurors were instructed to choose among the following verdicts: (1) guilty of first-degree murder on the basis of *both* felony murder and malice, premeditation and deliberation; (2) guilty of first-degree murder on the basis of felony murder only; (3) guilty of first-degree murder on the basis of malice, premeditation and deliberation only; (4) guilty of second-degree murder; (5) guilty of voluntary manslaughter; and (6) not guilty.

This case, in essence, boiled down to whether jurors believed defendant's version of what happened the night of 3 November 1988, or whether they believed the State's version of events. The State's evidence, as presented at trial, could reasonably lead jurors

---

1. Defendant, at oral argument, noted that the jury charge to which he objects is based almost verbatim on the North Carolina Pattern Jury Instructions. N.C.P.I.— Crim. 206.10 (1989). Because this jury instruction is used in many first-degree murder cases, defendant urged this Court to address the merits of his argument even if we decided this issue against him on the basis of the plain error rule. Specifically, defendant asked this Court to invoke its supervisory powers to strike the "lack of provocation" instruction from the Pattern Jury Instructions. We note that defendant's presentation at oral argument was based heavily on his Memorandum of Additional Authority. *See* N.C. R. App. P. 28(g) (newly discovered authority may be cited, but not discussed or analyzed). We decline defendant's invitation to reach out beyond this case to decide an issue not fully briefed.

to conclude that defendant killed John Henry with premeditation and deliberation while committing an armed robbery. In fact, jurors specifically rejected verdicts of second-degree murder and voluntary manslaughter. Defendant has not demonstrated that, absent the underlined phrase in the jury charge outlined above, the jury probably would have reached a different verdict. We hold that defendant cannot meet his burden under the plain error rule. *See Robinson*, 330 N.C. at 22, 409 S.E.2d at 300.

In sum, we find no prejudicial error in defendant's trial for first-degree murder and armed robbery and therefore uphold both convictions.

No error.