STATE OF NORTH CAROLINA v. ALFRED HAMILTON

No. COA01-562

(Filed 4 June 2002)

**1. Homicide— first-degree murder—evidence sufficient**

The trial court did not err by denying defendant's motion to dismiss a charge of first-degree murder where there was substantial evidence to support each element of the offense.

**2. Homicide— first-degree murder—premeditation and deliberation—evidence sufficient**

There was sufficient evidence of premeditation and deliberation in a first-degree murder prosecution where there was no evidence of provocation by the victim; defendant claimed he did not know her; the victim was stabbed seven times, which would indicate both brutality and that she had been rendered helpless prior to the end of the assault; and the large number of stab wounds led to her bleeding to death.

**3. Evidence— prior bad acts or crimes—assault on defense witness**

There was no error in a first-degree murder prosecution in which defendant was accused of stabbing the victim in the admis-

sion of evidence of a prior assault on a defense witness by defendant where knives from defendant's collection were used in both assaults, defendant cut the victim in this case seven times and the witness six times, and the period between the two assaults was two years. N.C.G.S. § 8C-1, Rule 404(b).

**4. Evidence— defendant HIV positive—admitted elsewhere**

The trial court did not err in a first-degree murder prosecution by allowing into evidence a nurse's testimony that defendant is HIV positive where defendant subsequently stated on direct examination that he was infected with AIDS.

**5. Criminal Law— limiting instruction—not requested**

There was no plain error in a first-degree murder prosecution in the trial court's failure to give limiting instructions on evidence of a prior assault by defendant and defendant's medical history where the evidence was admissible to establish identity and motive, but not as substantive evidence, and defendant would have been entitled to the instruction upon request. Defendant failed to request limiting instructions and there was no other requirement that they be given.

Appeal by defendant from judgment entered 27 July 2000 by Judge G.K. Butterfield, Jr. in Edgecombe County Superior Court. Heard in the Court of Appeals 14 March 2002.

*Roy Cooper, Attorney General, by Jonathan P. Babb, Special Deputy Attorney General, for the State.*

*Lamont Wiggins for defendant-appellant.*

THOMAS, Judge.

Defendant, Alfred Hamilton, appeals a conviction of first-degree murder. He was sentenced to life imprisonment without parole.

In four assignments of error, defendant contends the trial court erred by: (1) denying his motion to dismiss; (2) allowing testimony concerning a prior bad act by defendant that did not involve the victim; (3) allowing defendant's medical history into evidence; and (4) failing to give a limiting instruction regarding the evidence admitted in (2) and (3) above. For the reasons discussed herein, we find no error.

STATE v. HAMILTON

[150 N.C. App. 558 (2002)]

The State's evidence tends to show the following: On the morning of 16 July 1997, defendant ran to the home of Nelson Moody and said he had just seen a body lying in a nearby alley. Moody immediately called the police. Rocky Mount Police Department detectives were dispatched and found the dead body of Rometta Marie Bellamy, a known prostitute, behind some trash carts. A sock was tied around her neck and she was naked except for her shoes and socks.

Detective Michael Lewis interviewed defendant. Defendant told Lewis that as he walked down the street at 8:00 a.m. on 16 July 1997, he saw legs protruding from behind a trash cart. He then walked within ten feet of the body and, after getting a closer look, ran to Moody's home.

Detective Sandra Kay Rose, a Crime Scene Investigator with the Rocky Mount Police Department, described the trash carts near the victim as having "wiping marks" on them, as "if you took a wet rag and you wiped . . . [the] area." She testified that the body could only be seen by looking back at an angle after walking towards the house. It could not be seen from the street.

Defendant usually stayed at the home of his sister, Janet Dukes, while in Rocky Mount. After obtaining consent from Dukes to search her home, Rose said she seized assorted white socks, a pair of blue shorts, and a brown carry bag containing three knives from a closet in the room where defendant slept. Brenda Bissette, an expert in the field of forensic D.N.A. analysis, testified that the blood found on the inside of defendant's blue shorts matched the blood of the victim. Dr. Marcia Eisenberg, an expert in the same field, determined that D.N.A. taken from defendant's shorts matched the victim's. Dr. Louis Levy, the pathologist who performed the autopsy, said Bellamy died from loss of blood due to several stab wounds.

Eugene Young, who also lived in Dukes's home, said he let defendant in the house around 2:00 or 2:30 a.m. on 16 July 1997, after defendant had returned from a trip to New York. Defendant went back out after Young loaned him his house key. Young fell asleep and the next thing he remembered was defendant coming back in the house, going into a closet, and then leaving again. Young did not know what time it was.

Dukes was awake when defendant arrived at her home from New York around 2:00 a.m. When she saw him again at approximately 5:45 a.m., she noticed he was not wearing any socks. She briefly went to

another room and, upon returning, saw that defendant had put on some socks. Dukes also said the washing machine had been used during the night and that defendant's clothes and shoes were in it.

Defendant's evidence, meanwhile, tends to show the following: Defendant traveled to New York with Moses Battle, Jr., Dukes's boyfriend, and did not return until around 2:00 a.m. on 16 July 1997.

Denise Smith, a former girlfriend of defendant's, said that on the morning of 16 July 1997 defendant gave her money to purchase cocaine for him. On cross-examination, Smith admitted that on 23 May 1995, defendant cut her six times with a nineteen-inch butcher knife.

Franklin Whitfield stated that he saw Bellamy alive at 3:30 a.m. on the morning of 16 July 1997.

Defendant also called an adverse witness, Blondie Hinton, who was the victim's first cousin. Hinton testified that around 6:30 or 7:00 a.m. on 16 July 1997, she saw a man "bent down like he was removing something from a car and took it behind a house" near the location where the body was found. Hinton saw only the side of the man's face and was unable to immediately identify him. After police officers showed her pictures of defendant's side profiles, however, she identified defendant as the man she saw.

Defendant took the stand in his own defense. He testified that after returning from his trip, he spent a few minutes smoking crack cocaine with Smith and then went to the house he shared with Young and Dukes. Young let him in because he had no key. After retrieving a lighter and "stem" from inside, defendant sat on the porch and smoked more crack. He then went in search of Smith to recover a lighter he had loaned her. After she told him she had lost it, he returned home, put some clothes in the washer, and went to sleep.

Defendant said he left home around 7:00 a.m. to visit Moody. On the way, he saw the victim's legs in the alley, panicked, and ran to Moody's house. Defendant claimed he brushed against a trash cart as he was looking at the victim. Moody called the authorities and defendant waited for them to arrive. Defendant volunteered to speak with the police and said he did not know the victim.

Defendant also testified that his assault on Smith was actually self-defense. They were fighting and Smith had been threatening him with a razor. He said her wounds were superficial; he just "stabbed

her in the hand and arm." Defendant also testified that he uses more than four aliases and collects knives.

In rebuttal, Rocky Mount Police Department Detective Brian McGrath testified that defendant never mentioned touching a trash cart in his statement to the police. Also in rebuttal, Rose noted there was no blood on the outside of the trash carts. She said there were only wiping marks on the outside of the carts and a rag stained with the victim's blood inside one of them.

Defendant was convicted of first-degree murder. The State did not seek the death penalty and defendant was sentenced to life imprisonment. He appeals.

[1] By his first assignment of error, defendant contends the trial court erred by denying his motion to dismiss based on the State's failure to prove every essential element of first-degree murder.

> On a motion to dismiss, the trial court must view the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from it. If there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied.

*State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 382-83 (1988) (citations omitted). Murder in the first degree is the "intentional and unlawful killing of a human being with malice and with premeditation and deliberation." *State v. Fisher*, 318 N.C. 512, 517, 350 S.E.2d 334, 337 (1986). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980).

Here, the State presented evidence that: (1) the victim's blood was on the inside of defendant's shorts; (2) one of the three knives owned by defendant was consistent with the weapon used to inflict the victim's wounds; (3) defendant returned home from New York at two in the morning, went back out, returned home, showered, and then washed his clothes and shoes; (4) defendant was identified by Hinton as the man she saw around 6:30 a.m. bending down as if removing something from a car and taking it behind a house; (5) defendant claimed to have discovered the body, saying he saw the victim's legs protruding from behind the trash carts when, actually, the victim's body could not be seen from the street; (6) defendant

claimed for the first time at trial that the blood inside his shorts resulted from his "rubbing" against a trash cart; and (7) Detective Rose testified that there was no blood on the outside of the trash carts because they had been wiped and that a rag stained with the victim's blood was found in one of the carts. Viewing the evidence in the light most favorable to the State, there is substantial evidence to support a finding that defendant committed the murder.

**[2]** Defendant further contends, however, that the State failed to present substantial evidence of premeditation and deliberation. No particular amount of time is required for premeditation, and the time can be very short. *See, e.g., State v. Taylor*, 344 N.C. 31, 45, 473 S.E.2d 596, 604 (1996). Our Supreme Court sets forth the analysis as follows:

> When determining whether there is sufficient evidence that a killing was done with premeditation and deliberation, the court may consider several circumstances, including the following: (1) want of provocation on the part of the deceased; (2) the conduct and statements of defendant before and after the killing; (3) the dealing of lethal blows after the deceased has been felled and rendered helpless; (4) evidence that the killing was done in a brutal manner; and (5) the nature and number of the victim's wounds.

*State v. Quick*, 329 N.C. 1, 20, 405 S.E.2d 179, 191 (1991) (citations omitted). Here, there was no evidence of provocation on the part of the victim. Defendant claimed he did not know her. There was evidence of a struggle. The victim was stabbed seven times, which would indicate both brutality and that she had been rendered helpless prior to the end of the assault. The large number of stab wounds led to her bleeding to death. Based on the foregoing, there was substantial evidence of premeditation and deliberation. The State thus presented relevant evidence adequate to support a finding that defendant intentionally and unlawfully killed a human being with malice and with premeditation and deliberation. Accordingly, this assignment of error is without merit.

**[3]** By his second assignment of error, defendant contends the trial court erred in admitting evidence of a prior assault of Smith by defendant. Evidence of prior bad acts is inadmissible under Rule 404(b) if its only purpose is "to prove the character of a person in order to show that he acted in conformity therewith." N.C.R. Evid. 404(b).

Evidence of the assault here, which occurred two years prior to the murder of the victim, was admitted before and after defendant's sole objection to this evidence. Smith, defendant's own witness, stated on cross-examination that defendant had assaulted her with a butcher knife. Defendant then lodged a general objection to the State's question: "Can you describe the knife for the jury?" It was overruled. The witness then repeated that defendant had stabbed her with a knife. She also answered questions, without objection, regarding where and how many times defendant had cut her and the medical treatment she received. "Where evidence is admitted over objection and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost." *State v. Whitley*, 311 N.C. 656, 661, 319 S.E.2d 584, 588 (1984).

Even if defendant had properly objected, however, this evidence would have been admissible under Rule 404(b) of the North Carolina Rules of Evidence. Rule 404 excludes evidence of other bad acts if its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged. N.C.R. Evid. 404(b). The Rule allows evidence of prior bad acts to prove, among other things, identity. *Id.*

Here, the risk of undue prejudice does not outweigh the probative value of the evidence, *see* N.C.R. Evid. 403, because of the similarity and temporal proximity of the incidents. Knives were used in both assaults. Defendant said that he collected knives, and that the fourth knife in his collection was the one used to assault Smith. One of the remaining knives in defendant's collection was consistent with the wounds suffered by the victim in this case. Smith testified that defendant cut her six times; the victim here was stabbed seven times. The time period between the two assaults is two years. *See State v. Parker*, 113 N.C. App. 216, 225, 438 S.E.2d 745, 751 (1994) (bad act occurring five years before the crime charged sufficiently similar and not so remote in time as to be more probative than prejudicial). Accordingly, the probative value of the evidence introduced in the case was not only to show propensity. We therefore overrule this assignment of error.

[4] By his third assignment of error, defendant contends the trial court erred by allowing defendant's medical history into evidence, specifically, that defendant is HIV positive. A nurse testified to his being HIV positive. Defendant lodged an objection. Subsequently, however, defendant stated on direct examination that he was infected with the AIDS virus. The benefit of defendant's objection

was thus lost. *Whitley*, 311 N.C. at 661, 319 S.E.2d at 588. Accordingly, this assignment of error is without merit.

[5] By his fourth assignment of error, defendant argues that the trial court committed plain error by failing to give limiting instructions regarding the evidence of the prior assault and his medical history. However, defendant did not request a limiting instruction at trial and therefore his argument is based on the contention that the trial court committed plain error. N.C.R. App. P. 10(b)(2). In order to prevail under a plain error analysis, a defendant must show: (1) there was error; and (2) without this error, the jury would probably have reached a different verdict. *State v. Faison*, 330 N.C. 347, 361, 411 S.E.2d 143, 151 (1991).

Because the evidence was admissible as bases for establishing defendant's identity and motive, but not as substantive evidence, defendant was entitled, upon request, to instructions regarding the limitation of the evidence to its proper scope. *See* N.C.R. Evid. 105 (when evidence admissible for one purpose but not for another purpose is admitted, the court, upon request, shall instruct the jury accordingly). Our Supreme Court stated in *State v. Maccia*:

> Although it is true that the jury was not instructed in the present case to limit its consideration of the evidence to purposes of impeachment, it does not appear from the record that the defendant requested a limiting instruction. The admission of evidence which is competent for a restricted purpose will not be held error in the absence of a request by the defendant for limiting instructions. *State v. Montgomery*, 291 N.C. 91, 229 S.E.2d 572 (1976); *State v. Goodson*, 273 N.C. 128, 159 S.E.2d 310 (1968).

*State v. Maccia*, 311 N.C. 222, 228-29, 316 S.E.2d 241, 245 (1984); *see also State v. Jones*, 322 N.C. 406, 414, 368 S.E.2d 844, 848 (1988).

Here, defendant failed to request limiting instructions and there was no requirement otherwise for the trial court to give them. He is therefore unable to prevail on this assignment.

NO ERROR.

Judges MARTIN and HUDSON concur.