STATE OF NORTH CAROLINA v. JOHN FITZGERALD RANKIN

No. COA07-1386

(Filed 15 July 2008)

## 1. Robbery— felony murder—felony of robbery—intent to steal—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charge of robbery with a dangerous weapon and felony murder based upon the robbery because: (1) although defendant correctly asserts that the gist of robbery with a dangerous weapon is not the taking but the taking by force or putting in fear, our Supreme Court has repeatedly held that it was immaterial whether the intent was formed before or after force was used upon the victim, provided that the theft and force are aspects of a single transaction; and (2) taking the facts in the light most favorable to the State, the jury could have concluded that defendant entered the house intending to steal firearms and, once having obtained them and after killing the defendant, left without conducting a more rigorous search of the house for hidden cash that would have delayed his escape.

## 2. Evidence— calling witness who would invoke Fifth Amendment privilege—notice

The trial court did not commit plain error in a first-degree murder and robbery with a dangerous weapon case by allowing the State to call defendant's son as a witness even though the State knew the witness would invoke his Fifth Amendment privilege against self-incrimination because: (1) the State provided notice to the Attorney General the day before trial and presented proof of that notice to the trial court the day trial began; (2) the jury heard evidence that a named second person was involved in the crime, and failure to call that person as a witness would have prejudiced the State's case against defendant; and (3) defendant cited no law suggesting that there existed an obligation to provide prior notice to either the court or the attorney representing a witness that he would be offered use immunity.

## 3. Criminal Law— instruction—acting in concert

The trial court did not err in a first-degree murder and robbery with a dangerous weapon case by instructing the jury on acting in concert because: (1) the evidence revealed that the wounds

on the victim's front and back suggested that he might have been attacked by two different weapons simultaneously; and (2) without presenting the jury with these instructions, the jury might have decided it could not determine whether defendant or another individual struck the blow that killed the victim, and as such acquitted defendant.

**4. Evidence— defendant and witness Muslim—religion used as mechanism to get witness to testify—alibi**

The trial court did not err in a first-degree murder and robbery with a dangerous weapon case by allowing the State to present evidence identifying defendant and a witness as Muslim because: (1) evidence that defendant attempted to procure a false alibi from the witness is relevant; (2) defendant simply argued the jury probably had an anti-Islamic bias, and aside from the fact that a Bible was in the jury room, defendant presented no evidence to support this statement; (3) the witness testified that, per her religious beliefs, when defendant asked her to provide an alibi for him, she felt obligated to do so, which is why she initially testified that he had been with her at the time of the murder; (4) the fact that defendant was using his religion as a mechanism to try to get the witness to testify on his behalf and actually commit perjury was relevant for that purpose, and it was not being offered as a means of showing credibility; and (5) the court went through the pertinent phone calls between defendant and the witness, told the State which portions of each call could be played for the jury, and this process eliminated significant portions of each call that the court considered discussions of faith and nothing to do with trying to influence the witness.

Appeal by defendant from judgments entered 8 December 2006 by Judge Michael E. Beale in Rowan County Superior Court. Heard in the Court of Appeals 14 May 2008.

*Attorney General Roy A. Cooper, III, by Solicitor General Christopher G. Browning, Jr., for the State.*

*Parish & Cooke, by James R. Parish, for defendant-appellant.*

HUNTER, Judge.

John Fitzgerald Rankin ("defendant") appeals from judgments entered on 8 December 2006 pursuant to a jury verdict of guilty on

charges of first degree murder and robbery with a dangerous weapon. After careful review, we find no error.

I.

The evidence offered at trial tended to show as follows: Defendant spent the weekend of 13 August 2004 with his cousin James Rankin ("Junior") and his son Cedric Hawkins. On Monday, 16 August 2004, defendant and Hawkins left the apartment, telling Junior that they were going to "make a lick[,]" which Hawkins explained at trial meant commit a robbery. Defendant borrowed a car from his girlfriend in the morning; Hawkins returned it at 2:00 p.m. so that she could pick her children up from school, then borrowed it again afterward.

At 3:15 p.m. on 16 August 2004, Kevin Ritchie ("the victim") was found stabbed to death in his home. The fatal stab wound was found to be a particularly deep wound in his chest; other smaller sharp trauma injuries were found on his back. Approximately twenty to thirty firearms were later determined to be missing from his home.

Various witnesses at trial testified that the victim was very careful about personal security, always keeping the multiple locks on the doors to his home locked and only allowing in persons he knew well. The victim and defendant went to school together and, according to testimony and telephone records, had been in close communication prior to the victim's death.

Within a week of the victim's death, two of his rifles were pawned by Junior and his friend Timothy Allison; a third rifle was later found in the trunk of Allison's car. Upon questioning by the police, Junior testified that he received the weapons from defendant shortly after the victim's death; defendant had transferred the weapons to Allison's trunk in the presence of both Allison and Junior, removing them from his own car trunk wrapped in a sheet later determined to have come from the victim's home.

Defendant was charged with first degree murder on 17 September 2004. He was indicted in separate proceedings for first degree murder and robbery with a dangerous weapon. The charges were joined, and the jury returned a verdict of guilty of first degree murder under a theory of felony murder as well as guilty of robbery with a dangerous weapon. Defendant was sentenced to life imprisonment without parole for first degree murder. The judgment as to robbery with a dangerous weapon was arrested. Defendant now appeals his conviction.

## II.

## A.

**[1]** Defendant first argues that the trial court incorrectly denied his motion to dismiss the charges of robbery with a dangerous weapon and first degree murder because the State presented insufficient evidence that defendant committed each charge. However, he only addresses the robbery charge in his brief, implying that because insufficient evidence supports that charge, the felony murder charge that relies on it as the underlying felony also fails.

> [T]he true test of whether to grant a motion to dismiss is whether the evidence, considered in the light most favorable to the State, is "existing and real, not just seeming or imaginary." If the evidence will permit a reasonable inference that the defendant is guilty of the crime charged, the trial judge should allow the case to go to the jury.

*State v. Faison*, 330 N.C. 347, 358, 411 S.E.2d 143, 149 (1991) (citation omitted).

Defendant likens the facts of this case to those in *State v. Powell*, 299 N.C. 95, 100, 261 S.E.2d 114, 118 (1980), where the defendant was found in possession of the murder victim's television and knife. The Supreme Court overturned defendant's conviction for robbery, stating that the property had been taken "as an afterthought once the victim had died"; there, however, the victim's body was found in her bed with copious physical evidence that she had been raped, then murdered. *Id.* at 102, 261 S.E.2d at 119.

In the case at hand, the evidence, taken in the light most favorable to the State, shows that the victim was killed without a struggle; that defendant and the victim knew each other and were in close communication; that defendant told his cousin he and his son were leaving to commit a robbery; that defendant told his cousin he could obtain firearms; and that, after the murder, defendant was in possession of certain firearms stolen from the victim's house. Further, the $1,000.00 in cash left in the gun safe that defendant makes much of—arguing that it shows stealing the guns was an afterthought, since if defendant were there to steal he would have taken the money—was hidden in the safe, and hidden well enough that it was not discovered until the police's second day of searching the house. Indeed, the officer who finally found the money said he looked in the safe a half dozen times without seeing it.

Defendant is correct that "[t]he gist of [robbery with a danger-ous weapon] is not the taking but the taking by force or putting in fear." *Powell*, 299 N.C. at 102, 261 S.E.2d at 119; *see* N.C. Gen. Stat. § 14-87(a) (2007). However, our Supreme Court has repeatedly held that "it is immaterial whether the intent was formed before or after force was used upon the victim, provided that the theft and force are aspects of a single transaction." *Faison*, 330 N.C. at 359, 411 S.E.2d at 150; *see also State v. Green*, 321 N.C. 594, 605, 365 S.E.2d 587, 594, *cert. denied*, 488 U.S. 900, 102 L. Ed. 2d 235 (1988); *State v. Fields*, 315 N.C. 191, 203, 337 S.E.2d 518, 525 (1985).

Taking these facts in the light most favorable to the State, the jury could well have concluded that defendant entered the house intend-ing to steal the firearms and, once having obtained them and killed defendant, left without conducting a more rigorous search of the house that would have delayed his escape. As such, defendant's argu-ment is without merit.

## B.

[2] Defendant next argues that the trial court erred in calling de-fendant's son as a witness because the State knew that he would invoke his Fifth Amendment privilege against self-incrimination. Requiring him to take the stand and invoke that privilege, defendant argues, prejudiced the defendant because it could have been taken by the jury to imply his own guilt and defendant's guilt as well. Because defendant did not object at trial, we review this assignment of error for plain error.

> "[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has ' "resulted in a miscarriage of justice or in the denial to appellant of a fair trial" ' or where the error is such as to 'seriously affect the fairness, integrity or public repu-tation of judicial proceedings' or where it can be fairly said 'the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.' "

*State v. Lemons*, 352 N.C. 87, 96-97, 530 S.E.2d 542, 548 (2000) (alter-ations in original; citations omitted), *cert. denied*, 531 U.S. 1091, 148 L. Ed. 2d 698 (2001).

The State called Cedric Hawkins, defendant's twenty-two-year-old son, to the stand during its case in chief on a Friday morning. The State elicited his name, age, and relationship to defendant before Hawkins asserted his Fifth Amendment privilege not to incriminate himself and refused to answer any further questions. The State then offered Hawkins use immunity per N.C. Gen. Stat. §§ 15A-1051 and -1052 (2007). The court allowed Hawkins and his attorney to confer regarding the offer, but Hawkins still refused to testify. The court then heard from the State and Hawkins's attorney as to a material witness order, and finally ordered that Hawkins appear on Monday at 2:00 p.m., when court would be back in session.

Defendant argues that the State put Hawkins on the stand knowing that he would assert his Fifth Amendment privilege not to testify, and that refusal to testify improperly prejudiced the jury against his client. This argument is without merit.

Per N.C. Gen. Stat. § 15A-1052(b),

[t]he application [for immunity] may be made whenever, in the judgment of the district attorney, the witness has asserted or is likely to assert his privilege against self-incrimination and his testimony or other information is or will be necessary to the public interest. Before making application to the judge, the district attorney must inform the Attorney General, or a deputy or assistant attorney general designated by him, of the circumstances and his intent to make an application.

The State here provided notice to the Attorney General the day before trial and presented proof of that notice to the trial court the day trial began.

A very similar situation occurred in *State v. Thompson*, 332 N.C. 204, 420 S.E.2d 395 (1992). There, Jose Sanchez had admitted to police that he had killed the victim, but that he had done so at the behest of the defendant. *Id.* at 213, 420 S.E.2d at 400. On appeal, the Court analyzed Sanchez's being called as a witness as follows:

At the time of defendant's trial, Sanchez was awaiting appeal on his first-degree murder conviction. Through his appellate counsel, Sanchez informed the trial court and the State that he would not answer any questions and would invoke the Fifth Amendment. The trial court nonetheless allowed the State to call Sanchez to the witness stand in the presence of the jury to require him to give his name and invoke his rights. We believe that this

was permissible because the prosecutor's case would be "seriously prejudiced" by failure to offer Sanchez as a witness in light of Sanchez' role in the murder.

*Id.* at 223, 420 S.E.2d at 406 (citation omitted). There, as here, the jury heard evidence that a named second person was involved in the crime. Failure to call that person as a witness would have seriously prejudiced the State's case against defendant. Further, defendant can cite to no law suggesting that there exists an obligation to provide prior notice to either the court or the attorney representing a witness that he will be offered use immunity. Certainly defendant has not shown how the State's action might amount to plain error. As such, this assignment of error is overruled.

C.

[3] Defendant next argues that the trial court erred in instructing the jury on acting in concert because the instruction was not supported by the evidence presented at trial. This argument is without merit.

The instruction given by the court was as follows:

For a person to be guilty of a crime, it is not necessary that he personally do all of the acts necessary to constitute the crime. If two or more persons join in a common purpose to commit a crime, each of them, if actually or constructively present, is not only guilty of that crime if the other person commits the crime, but also guilty of any other crime committed by the other in the pursuance of the common purpose to commit the original crime, or as a natural or probable consequence thereof.

"The trial court must give a requested instruction that is supported by both the law and the facts." *State v. Nicholson*, 355 N.C. 1, 67, 558 S.E.2d 109, 152, *cert. denied*, 537 U.S. 845, 154 L. Ed. 2d 71 (2002).

An instruction on the doctrine of acting in concert is proper when the State presents evidence tending to show the defendant was present at the scene of the crime and "acted together with another who did acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime."

*State v. Cody*, 135 N.C. App. 722, 728, 522 S.E.2d 777, 781 (1999) (citation omitted). Among the evidence presented by the State at trial is the following: Defendant told his cousin he and his son were leaving the house that morning to commit a robbery; defendant borrowed a

car from his girlfriend the morning of the murder, but Hawkins returned it; and the wounds on the victim's front and back suggested that he might have been attacked by two different weapons simultaneously. Further, although Hawkins refused to testify at trial, shortly after the murder he made a statement to police in which he stated that he drove with defendant to the victim's house. As the State notes, without presenting the jury with instructions on acting in concert, the jury might have decided it could not decide whether Hawkins or defendant struck the blow that killed the victim, and as such acquitted defendant. Defendant has not shown that presenting this instruction to the jury was error.

## D.

**[4]** Finally, defendant argues that the trial court erred by allowing the State to present evidence identifying defendant and a witness as Muslim. This argument is without merit.

The State presented recordings of certain phone calls made by defendant to Chantay Brown, a woman with whom he had been involved in the past. Brown's initial testimony provided defendant with an alibi for the time of the murder; however, she later retracted that statement and testified that defendant asked her via calls and letters to provide him with an alibi for the time of the crime. Defendant argues that this unfairly prejudiced the jury against him, as the jury could well have anti-Muslim beliefs, and that any probative value of the evidence was outweighed by its prejudicial effect.

This argument is based on Rule 403 of the North Carolina Rules of Evidence. Rule 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" N.C. Gen. Stat. § 8C-1, Rule 403 (2007).

> Whether to exclude evidence pursuant to Rule 403 is a matter left to the sound discretion of the trial court. A ruling by the trial court will be reversed for an abuse of discretion only upon a showing that the ruling was so arbitrary that it could not have been the result of a reasoned decision.

*State v. Jones*, 347 N.C. 193, 213, 491 S.E.2d 641, 653 (1997) (internal citation omitted). "However, defendant has the burden to show not only that it was error to admit this evidence, but also that the error was prejudicial: A defendant must show that, but for the error, a different result would likely have been reached." *State v. Gayton*, 185 N.C. App. 122, 125, 648 S.E.2d 275, 278 (2007) (citation omitted).

Per North Carolina Rule of Civil Procedure 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2007). Evidence that a defendant attempted to procure a false alibi from a witness is certainly relevant. *See, e.g., State v. Whiteside*, 325 N.C. 389, 397, 383 S.E.2d 911, 915 (1989) (holding as admissible under Rule 401 "relevant circumstantial evidence tending to connect an accused with the crime"). *See also People v. Hansen*, 765 N.E.2d 1033, 1039 (Ill. App. 2002) (holding that "evidence that a defendant attempted to influence the testimony of a witness or to establish a false alibi is admissible to show consciousness of guilt" per state rule of evidence substantially identical to Rule 401); *State v. Allen*, 682 P.2d 417, 419 (Ariz. 1984) (holding as admissible "the attempt to procure a witness with the express purpose of testifying falsely is relevant" per state rule of evidence substantially identical to Rule 401). The question, then, is whether the prejudicial effect of this information outweighed its relevance.

Defendant simply states that the jury probably had an anti-Islamic bias. Aside from the fact that a Bible was in the jury room, however, defendant presents no evidence to support this statement. Further, Brown testified that, per her religious beliefs, when defendant asked her to provide an alibi for him, she felt obligated to do so, which is why she initially testified that he had been with her at the time of the murder. When the State asked her during *voir dire* whether her religious beliefs and the fact that defendant was of the same faith affected the way she reacted to defendant's request, she testified: "You're supposed to help them, assist them, if you can. You're supposed to help him. That's why I did agree to help him." After listening to Brown's testimony and recordings of the phone calls between her and defendant out of the jury's presence, the trial court concluded that "defendant was using his religion as a mechanism to try to get this witness to testify in his behalf, and actually commit perjury; that it is relevant for that purpose, and it is not being offered as a means to showing credibility[.]" The court then went through the calls again and told the State which portions of each call could be played for the jury, a process which eliminated significant portions of each call that the court considered "just discussions of faith and nothing to do with the trying to influence her."

Given the care with which the trial court handled this evidence, and given the fact that defendant cannot show that, without this

evidence, a different result would likely have been reached, this assignment of error is overruled.

## III.

Because defendant has not shown any error in his trial, we find no error.

. No error.

Judges STEELMAN and STEPHENS concur.